Glenn **WEIBLE** and Patricia Weible,
Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 15150.

United States Court of Appeals
Ninth Circuit.

April 15, 1957.

Lemmon, Circuit Judge, dissented.

Thompson, Royston, Wiener & Moss, Robert S. Thompson, Clifford E. Royston, Conrad J. Moss, Los Angeles, Cal., for appellants.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Helen A. Buckley, Karl Schmeidler, Washington, D. C., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Los Angeles, Cal., for appellee.

Before POPE and LEMMON, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

This is an action for refund of income taxes paid by appellant Glenn Weible for the year 1947, and by the appellants, Glenn Weible and his wife Patricia, for the years 1948 and 1949. During this period Weible was employed abroad. Appellants filed their claims for refund for the sum of approximately $3,509.79, the total amount of taxes paid during these years, claiming exemption under Section 116, Internal Revenue Code of 1939, Section 116, Title 26 U.S.C.A. The Collector of Internal Revenue disallowed the claims. Appellants then brought their action in the District

Court for the recovery of the taxes paid. In that action judgment went for the Collector and against the appellants. Hence this appeal.

### The Facts

Weible, the taxpayer, had been employed by Max Factor and Company for some years prior to World War II, from 1938 to 1941. During the war he was employed by Lockheed, and in 1945 again entered Max Factor's employment, this time for the specific purpose of planning and constructing of manufacturing plants for the company in foreign countries, and the training of personnel to operate the same. The contract of employment was oral and by it Weible agreed to undertake the duties connected with these foreign assignments and to remain permanently outside the United States in the performance of these duties except for short periods of training and consultation. The periods of foreign employment which followed were as follows:

Mexico, from January until May, 1946; Australia, from June, 1946, to October, 1948; Canada, from October, 1948, until July, 1949; England, from July, 1949 to December, 1950; South America, March, 1951, until date.

Without going into the evidence it is sufficient to state that in each country Weible became "integrated," at least to the extent of establishing social and business contacts with the local inhabitants. Since his job was the construction of manufacturing plants and the training of operating personnel his contacts in each country, as one may well imagine and as the record indicates, were many and varied, and much of his success appears to have been based on his ability to be and become a part of the social and commercial society of the particular countries in which he resided.

At the time Weible left for Australia he and his wife were living in Los Angeles where the wife was employed. They occupied a leased apartment. During his absence in Australia the couple were divorced, and he there met his present wife, Patricia, whom he married on a visit to the United States. At the time of the divorce Weible and his first wife owned a bank account, an automobile, and an equity in an unimproved lot they were purchasing, all of which was in Los Angeles, California. As a part of the divorce settlement Weible bought his wife's equity in the lot for $7,500.00, and gave her the furniture. The automobile was sold. During the years that followed he continued to make installment payments on the lot purchase contract. His bank account was maintained in Los Angeles.

During the period of the tax years involved the accounting department of Max Factor computed Weible's income taxes and paid the amount over to the Collector of Internal Revenue, though there was some doubt as to whether Weible owed any tax by reason of his foreign employment and residence. However, to be on the safe side it was paid, and the balance of salary deposited in Weible's Los Angeles bank account.

Weible and his wife then filed their claims with the Collector of Internal Revenue for a refund of the taxes paid for the calendar years 1947, 1948, and 1949. All claims for refund were denied and Weible brought this action in the District Court to recover the taxes for the year 1947, and he and his wife together for the taxes paid for the years 1948 and 1949.

The Exemption Statute, Section 116.

The pertinent portion of Section 116 reads as follows:

"Section 116. Exclusion From Gross Income.

"In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

"(a) Earned income from sources without the United States.—

"(1) Foreign resident for entire taxable year. In the case of an individual citizen of the United States,

who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25 (a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection * * *."

### The Question Presented

Appellants present the question before the court in this fashion:

"The only question presented is whether appellants were bona fide residents of a foreign country or countries during the taxable years 1947, 1948, and 1949 within the meaning of Section 116(a) of the Internal Revenue Code of 1939 and thus entitled to the income exemption provided by that section."

The appellee poses the identical question in this language:

"Whether the District Court erred in finding that the evidence did not support the taxpayers' contention that he was a bona fide resident of various foreign countries during the taxable years in question, within the meaning of Section 116(a), Internal Revenue Code of 1939."

### Findings, Conclusions and Judgment

Findings of fact, conclusions of law and judgment were entered on April 6, 1955. The court concluded that appellant Glenn Weible was not a bona fide resident of Australia for the calendar year 1947, that Glenn Weible and Patricia Weible were not bona fide residents of Australia and Canada during the calendar year 1948, and that the appellants were not bona fide residents of Canada and England during the calendar year 1949, within the meaning of Section 116 of the Internal Revenue Code of 1939, and that therefore the earnings of Glenn Weible from Max Factor were taxable during this period. The judgment ordered that the appellants take nothing by their complaint.

### Specifications of Error

Appellants' specifications of error are five in number, and are as follows:

(1) The court erred in failing to find that pursuant to his agreement with his employer and during the years 1947, 1948, and 1949 Weible agreed to and intended to remain continuously and indefinitely in a foreign country or countries in the performance of his duties except for short periods of training and consultation.

(2) The court erred in failing to find that the purpose of Weible in going to Australia, Canada and England was of such a nature that an extended stay in those countries may have been necessary for its accomplishment.

(3) The court erred in concluding that appellant Glenn Weible was not a bona fide resident of Australia during the calendar year 1947 within the meaning of Section 116, of the Internal Revenue Code of 1939.

(4) The court erred in concluding that appellants were not bona fide residents of Australia and Canada during the calendar year 1948 within the meaning of Section 116 of the Internal Revenue Code of 1939.

(5) The court erred in concluding that appellants were not bona fide residents of Canada and England during the calendar year 1949 within the meaning of Section 116 of the Internal Revenue Code of 1939.

### Clearly Erroneous Rule

Appellee contends that the facts of this case presented clear grounds for the District Court's finding that the taxpayer was not a bona fide resident of a

foreign country; that this holding was supported by substantial evidence and is not "clearly erroneous." Therefore, appellee contends, the decision of the trial court should be affirmed. In the reply brief the appellants meet this proposition head-on, in this fashion:

"Appellee implies that the holding of the District Court may be reversed only if this court finds that holding to have been clearly erroneous. On the contrary, since the question here presented is a question of law or mixed question of law and fact, this Court should review the entire record and in the light of all the evidence before it, substitute its judgment for that of the District Court if it finds that the conclusion of the District Court is contrary to the weight of the evidence. Commissioner [of Internal Revenue] v. Fiske['s Estate] 7 Cir., 1942, 128 F.2[d] 487, certiorari denied 317 U.S. 635 [63 S.Ct. 63, 87 L.Ed. 512]; Bogardus v. Commissioner, 1937, 302 U.S. 34, 39 [58 S.Ct. 61, 82 L.Ed. 32]."

If it is appellee's contention that we can reverse the District Court only if we find its holding to have been clearly erroneous, then we must dispose of such contention before we can proceed. We will resolve this first problem and then continue if our answer thereto should warrant.

In the Fiske case, Commissioner of Internal Revenue v. Fiske, 7 Cir., 128 F.2d 487, 489, cited by appellants, which was a case factually similar to ours, there was a like point raised, that is, was the matter reviewable. The Court said:

"Before discussing the cases * * * it is well that we dispose of respondent's contention that the conclusion of the Board that Fiske was a bona fide nonresident of the United States during 1936 is not reviewable here, since that represents a finding of fact."

The court then stated that the facts were not in dispute and the problem was one of construction. That, we think, describes our Weible case. Continuing, the court said:

"In such situations, the courts have repeatedly held that where the ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact, it is subject to judicial review. Bogardus v. Commissioner, 302 U.S. 34, 39, 58 S.Ct. 61, 82 L.Ed. 32, and Deputy v. Dupont, 308 U.S. 488, 499, 60 S.Ct. 363, 84 L.Ed. 416."

The Supreme Court in Bogardus v. Commissioner, 302 U.S. 34, 39, 58 S.Ct. 61, 64, 82 L.Ed. 32, referring to the conclusion of the lower court that certain payments were gifts, held:

"This, as we recently have pointed out, is 'a conclusion of law or at least a determination of a mixed question of law and fact. It is to be distinguished from findings of primary, evidentiary or circumstantial facts. It is subject to judicial review and, on such review, the court may substitute its judgment for that of the Board.' [Citing cases] If the conclusion of the Board be regarded as a determination of a mixed question of law and fact, it has, as we shall presently show, no support in the primary and evidentiary facts. The ultimate determination, therefore, should be overturned, under the doctrine of Helvering v. Rankin, supra [295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343], as a matter of law."

Here, in the Weible case, we have a mixed question of law and fact, so we have the right to review the record, and substitute our findings and conclusions for those of the District Court in the event we find the record warrants such action. We are not bound in situations such as this to the "clearly erroneous" rule, and we accept the proposition presented by appellants, that in

our review of this case we are not restricted by the findings and conclusions of the District Court.

The Fourth Circuit, in Commissioner of Internal Revenue v. Swent, 1946, 155 F.2d 513, 514, passed upon the question of whether the taxpayer, under the facts of the case, was a bona fide nonresident of the United States for more than six months during the taxable year, under the original Section 116 prior to the 1942 amendment. Said the court:

"The answer to this question depends upon the interpretation or construction of the words just quoted above [referring to Section 116]. That, we think, is a question of law, so that we are not bound to follow the decision of the Tax Court under Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. Said Mr. Justice Jackson in that case (320 U.S. at page 501, 64 S.Ct. at page 246): 'It is difficult to lay down rules as to what should or should not be reviewed in tax cases except in terms so general that their effectiveness in a particular case will depend largely upon the attitude with which the case is approached. However, all that we have said of the finality of administrative determination in other fields is applicable to determinations of the Tax Court. Its decision, of course, must have "warrant in the record" and a reasonable basis in the law. But "the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." ' "

## Burden of Proof

On the question of the burden which must be carried by the taxpayer in instances where he is seeking to bring himself within the provisions of exemption statutes see the following:

Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 111, 85 L.Ed. 29, where it is said:

"It is material that we are dealing here with a generally imposed surtax upon the undistributed net income of corporations, and that respondent's claim is for a credit in the nature of a specially permitted deduction. It has been said many times that provisions granting special tax exemptions are to be strictly construed."

In New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348, the following statement appears:

"Obviously, therefore, a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.

"These views, often reflected in decisions of this Court, have been recently reaffirmed and applied in Woolford Realty Co. v. Rose, 286 U.S. 319, 326 et seq., 52 S.Ct. 568, 76 L.Ed. 1128; Planters Cotton Oil Co. v. Hopkins, 286 U.S. 332, 52 S.Ct. 509, 76 L.Ed. 1135; and Helvering v. Independent Life Ins. Co., 292 U.S. 371, 54 S.Ct. 758, 78 L.Ed. [1311]."

In White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 184, 83 L.Ed. 172:

"We are not impressed by the argument that, as the question here decided is doubtful, all doubts should be resolved in favor of the taxpayer. It is the function and duty of courts to resolve doubts. We know of no reason why that function should be abdicated in a tax case more than in any other where the rights of suitors turn on the construction of a statute and it is our duty to decide what that construction fairly should be. * * Moreover, every deduction from gross income is allowed as a matter of legislative grace, and 'only as there is clear provision therefor can any particular deduction be allowed. * * * A taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.' New Colon-

ial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348."

The court in Deputy v. Dupont, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416, said:

"But allowance of deductions from gross income does not turn on general equitable considerations. It 'depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.' New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348. And when it comes to construction of the statutory provision under which the deduction is sought, the general rule that 'popular or received import of words furnishes the general rule for the interpretation of public laws,' Maillard v. Lawrence, 16 How. 251, 261, 14 L.Ed. 925, is applicable."

### Domicile and Residence

It does seem appellants' charge, to the effect that appellee is attempting to fuse two rather difficult words, "domicile" and "residence", has some merit. To permit that would be to create a hybrid and but compound the present confusion. But if we are to resolve the questions now before us it is necessary that we come to grips once and for all with the meaning of these expressions as used in Section 116. Since countless pages have been devoted to the distinctions between the two words our treatment will be short. The court in the Swent case, supra, approved the statement appearing in the Matter of Newcomb's Estate, 192 N.Y. 238, 84 N.E. 950, 954.

" 'Residence' means living in a particular locality, but 'domicile' means living in that locality with intent to make it a fixed and permanent home. 'Residence' simply requires bodily presence as an inhabitant in a given place, while 'domicile' requires bodily presence in that place, and also an intention to make it one's domicile."

Domicile is the most steadfast of the words, and is pretty well anchored in legal literature so far as meaning is concerned. Residence, on the other hand, has an evasive way about it, with as many colors as Joseph's coat. It reflects the context in which it is found, whereas "domicile" controls the context. Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile.

It appears to us that the courts in reaching divergent conclusions as to the applicability of Section 116 have, more times than even they realize, been caught out on the shifting meaning of the word residence. If we can lock that word down and view it in its proper perspective and context in Section 116, then we have mastered its unruly spirit, halter broken it, so to speak.

First we clear away the area occupied by the word domicile, then examine what we have left. As Judge Goodman stated in Meals v. United States, D.C.N.D.S.D. Cal.1953, 110 F.Supp. 658, the word is not statutorily defined, though it was attempted by Regulation 111, 26 C.F.R. 29.-116–1. Chief Judge Phillips in his dissent in Jones v. Kyle, 10 Cir., 1951, 190 F.2d 353, 356, said:

"The word 'resident' is a term of many and varied meanings. It was, therefore, appropriate for the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to adopt interpretative regulations. As used in the statute and as interpreted by the regulation 'residence' means broadly, presence as an inhabitant in a given place, not as a transient, but either indefinite as to time or for a purpose that is of such a nature that an extended stay be necessary for its accomplishment, although the person intends at all times to return to his domicile when

the purpose has been consummated or abandoned. [Citing Myers v. Commissioner, 4 Cir., 180 F.2d 969; Seeley v. Commissioner, 2 Cir., 186 F.2d 541, 543; Swenson v. Thomas, 5 Cir., 164 F.2d 783, 784]."

Referring again to the Meals case, Judge Goodman made the following comment:

"The Committee (Senate) sought to embrace in the term 'bona fide resident' all whose assimilation into the foreign life was sufficient to expose them to the burdens of adjusting to the foreign environment." [110 F.Supp. 661.]

His conclusion was to this effect:

"Viewing the entire picture of plaintiff's life in Germany in the light of the Congressional objective, it is clear that plaintiff was a bona fide resident of a foreign country * * * within the meaning of the exemption statute. *The Government's contrary conclusion stems from placing undue emphasis upon isolated and special aspects of plaintiff's life abroad.*" (Italics ours.)

In view of the foregoing discussion we are of the Opinion that Weible was not only a "resident" of Australia, Canada and England during the years 1947, 1948 and 1949, but on the facts of his case was a "bona fide" resident, within the meaning of Section 116 and Regulation Section 29.211–2.

## Legislative History

In White v. Hofferbert, D.C.Md.1950, 88 F.Supp. 457, considerable legislative history appears concerning Section 116, and the amendment of 1942. It is clearly apparent that the original section was in the interest of our foreign trade, and those of our citizens engaged therein, putting them on a parity with their competitors. The test of the original section was absence from the United States for more than six months in any one year. To prevent the tax evasion abuse inherent in the section as it then stood the 1942 amendment created a new test, namely, residence in a foreign country or countries for the full taxable year. In the legislative history of the amendment, see footnote 3, at page 462 of 88 F.Supp., of the reported case, the following appearing:

"In the application of such provision [one year foreign residence], the tests as to whether a taxpayer is a resident of a foreign country or countries will be those generally applicable in ascertaining whether an alien is a resident of the United States."

There is some discussion by the White court to the effect that vacation or business trips to the United States during the taxable year will not necessarily deprive the taxpayer, otherwise qualified, of the exemption of the statute. This point was not raised against Weible.

## Regulations

We have made reference to the fact that Treasury Regulation 111, Promulgated under the Internal Revenue Code, Section 29.116–1, invokes the aid of Section 29.211–2, in its attempt to define a "nonresident alien" in the following words:

"Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined in general by the application of the principles of Sections 29.211–2, 29.211–3, 29.211–4 and 29.211–5 relating to what constitutes residence or nonresidence, as the case may be, in the United States in the case of an alien individual."

Section 29.211–2 being the definition of a nonresident alien we have taken the liberty of rewording and restating it so as to make it directly applicable to a bona fide resident of a foreign country, as the expression is used in Section 29.116–1. To do this we have excluded certain of the words appearing in Section 29.211–2 (which appear in brackets) and have inserted appropriate conforming words (appearing in italics).

"(An Alien) *A citizen of the United States* actually present in (the United States) *a foreign country or countries* who is not a mere transient

or sojourner is a *bona fide* resident of (the United States) *a foreign country or countries* for the purposes of the *income tax exemption provided for in Section 116*. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time is not sufficient to constitute him a transient. If he lives in (the United States) *a foreign country or countries* and has no definite intention as to his stay, he is a resident. One who goes to (the United States) *a foreign country or countries* for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the (alien) *citizen* makes his home temporarily (in the United States) *abroad* he becomes a *foreign* resident, though it may be his intention at all times to return to his domicile (abroad) *in the United States* when the purpose for which he (came) *left the United States* has been consummated or abandoned. * * *"

In Swenson v. Thomas, 5 Cir., 1947, 164 F.2d 783, 784, the court made these interesting comments in reference to the regulation above quoted:

"The Regulation [Reg. 111, Section 29.211–2] makes no difficulty. It excludes 'a mere transient or sojourner', and correctly. A transient means literally 'one going across', or passing through. 'Sojourner' is built around the French word 'jour', meaning a day, and signifies a mere temporary presence or visit."

■ In our opinion the record establishes without the peradventure of a doubt that Weible was a bona fide resident of a foreign country or countries as that expression is attempted to be defined by Regulation Section 29.116–1 and by Section 29.211–2, as we have revised it in the manner above set out. He was (1) a citizen of the United States; (2)

actually present in a foreign country or countries, and (3) he was not a transient or sojourner. (4) He had at all times more than a mere floating intention to remain in foreign countries (5) for a period of time indefinite as to duration. (6) The purpose of his stay in the foreign countries could not be promptly accomplished but was of such a nature as to require an indefinite extended foreign residence, even though (7) it was his intention to return to the United States when the purpose for which he entered the foreign countries has been accomplished, or abandoned.

In Jones v. Kyle, supra, the court applied the tests set out in our revised Regulation Section 29.211–2. There the taxpayer had been employed in Saudi Arabia. He claimed a refund under Section 116, was denied, sued, and recovered judgment against the Collector. The court discussed the legislative background of Section 116 and its 1942 amendment, and in this connection cited the Ninth Circuit's "Downs" case, Downs v. Commissioner, 166 F.2d 504, in connection with what it termed the "new test for exemption," stating:

"Prior to the amendment the test was whether the taxpayer was a bona fide non-resident of the United States for more than six months during the taxable year. Since the amendment became effective, the test is whether the taxpayer was a bona fide resident of a foreign country or of foreign countries during the entire taxable year. Emphasis is no longer placed upon mere non-residence. It has been shifted to a bona fide resident of a foreign country or of foreign countries. The amendment not only extended the necessary time to a full year, but it changed the character of the status required for exemption from that of a non-resident of the United States to a bona fide resident of a foreign country or of foreign countries."

In commenting on the facts the court pointed out that the taxpayer was a pipe fitter by trade who entered into the con-

tract for eighteen months for the purpose of building up a "stake" with which to buy a farm in Oklahoma on his return. To that end he remained overseas for approximately eighteen months. His wife remained in the United States. The taxpayer, said the court, had expected to stay overseas no longer than three years but came back within eighteen months. During all times in Saudi Arabia he lived in temporary barracks furnished by the company, which also furnished his board, living in a selected area with some eight or nine hundred other Americans, which was, as the court said, "like a little piece of America transported to Saudi Arabia. * * * "

"Viewed in their totality," said the court, "these facts and circumstances make it clear that the taxpayer did not go to Saudi Arabia for permanent residence. He did not go there for an indefinite or undetermined period. He did not go on the basis of a mere floating intention, indefinite as to the time of his stay there or indefinite as to the time of his return to the United States. He went for a specific purpose and for a fixed time. He went with a firm intention of returning to the United States at the end of eighteen months when his employment with the company terminated, or in any event not later than three years after his arrival there. And his acts and conduct throughout his stay there were uniformly consistent with that intent and purpose. He was not a bona fide resident of that country throughout the taxable year 1945, within the intent and meaning of Section 116(a). Downs v. Commissioner, supra."

The Circuit Court reversed the District Court judgment in favor of the taxpayer, remanding with directions to dismiss the action. Chief Judge Phillips dissented, concluding that he would affirm the lower court, stating:

"From the foregoing it will be seen that Kyle sought employment in a foreign country for the purpose of earning and saving sufficient money to provide him with a home and security. It was a purpose of such a nature that an extended stay would be necessary for its accomplishment. It will be further observed that while he intended ultimately to return to his domicile in the United States, the period of his stay beyond 18 months was indefinite as to time.

"In the light of the applicable regulations, the undisputed facts, and the inferences to be drawn from such facts, which were peculiarly for the trial court, I do not think the trial court's finding that Kyle was a bona fide resident of Saudi Arabia during the entire taxable year of 1945 was erroneous. Accordingly, I would affirm."

### Application of Section 116

White v. Hoefferbert, supra, was similar to the Weible case. Taxpayer sought a refund from the Commissioner under Section 116(a) on the ground that his income was personal salary from sources without the United States while he was a bona fide resident of foreign countries. He was denied the refund and instituted suit in the District Court to recover the alleged overpayment. After hearing the evidence the court said that as a mixed question of law and fact the taxpayer's position was correct and that he was entitled to the refund claimed.

"The principal and indeed the only issue in the case is whether on the facts the taxpayer was a bona fide resident of foreign countries during the entire taxable years involved, within the meaning of the Revenue Code, § 116(a) (1). The physical facts are not really in dispute." [88 F.Supp. 458.]

Here the court said that the taxpayer's original engagement as a foreign service officer was for an indefinite period of time and it was only reasonable to believe that his intention was to remain in the foreign service of that company as a career or at least for many years.

It was pointed out that on each visit of the taxpayer to the United States his intention was to return to Spain. In our case Weible on each visit intended to return to the foreign country in which he was then residing, or to such other foreign country as Max Factor might send him. The comments made by the court in the White case, supra, so aptly apply to the Weible situation that we quote further:

"On hearing the taxpayer's extended testimony I found him a highly creditable and very well informed witness, and have no difficulty in finding his expression of intentions with regard to his foreign residence were in entire good faith. There is not the slightest suggestion in the case of any attempt by him to evade taxes. His foreign residence was solely due to the important business interests of the I. T. & T. in European countries. His case seems fairly typical of many citizens of the United States who accept foreign service for American enterprises with large interests abroad."

This case is factually similar to the Weible case in another respect, as is apparent from the following:

"The only item of evidence introduced by the defendant in any way tending to contradict the taxpayer was his statement in filling out a printed form of 'Application for Registration' before the United States Vice Consul at Stockholm in which, after stating other factual matters * * * there was a short sentence reading 'I intend to return to the United States within six months to reside permanently'. Divorced from its context this statement would, of course, be entitled to ponderable weight as bearing upon the bona fides of the taxpayer with respect to the duration of his employment for the I. T. & T. and his intended residence in Sweden. However, the statement was entirely satisfactorily explained by the taxpayer. * * * The evidence taken

as a whole is entirely satisfactory and convincing that the particular statement under the circumstances did not contradict the main and really undisputed facts of the case."

It will be remembered that the record in our Weible case indicated that the government offered "Exhibit A" in evidence. Over objection it was admitted subject to being ruled on at time of entering judgment. While no express ruling appears it was evidently considered by the court as in evidence. We question its admissibility but as we view it the admission did no harm to Weible. The exhibit consisted of an application made by Weible to the Australian Secondary Industries Commission for a certificate which would exempt him from taxes under the Australia statutes. In the application form Weible stated "I Glenn B. Weible being a nonresident of Australia" and further in the form said, in answer to the query as to his usual place of residence, "United States of America." Appellee relies heavily upon these statements. As said in the White case in relation to the taxpayer there making an application for registration wherein it was stated "I intend to return to the United States within six months to reside permanently," we feel that "the statement was satisfactorily explained by the taxpayer." Apparently the only statement that would satisfy appellee would be nothing less than a direct averment by Weible that he intended never to return to the United States, and such is not the intent of Section 116.

The court, White v. Hofferbert, supra, held that the conclusion reached was consistent with the wording of Section 116 and its evident purpose as revealed by its legislative history, with the regulations issued by the Commissioner, and by judicial decisions under the statute involving comparable fact. Concluding its discussion of Section 116 the court held:

"As applied to the facts in this case the statute clearly exempts income on two conditions, (1) that the taxpayer was during the entire taxable year a bona fide resident of a

168

foreign country, and (2) that the income excluded was for salary for services performed without the United States. These two conditions were clearly met * * *."

In Dunn v. Commissioner, 9 Cir., 1948, 220 F.2d 323, 324, the court pointed out that the taxpayer had not established that he was a bona fide resident of the Philippine Islands during the taxable years in question, and instead the Tax Court found that he "was a mere transient or sojourner." The court said that the finding was supported by substantial evidence.

The Ninth Circuit in Slaff v. Commissioner, 1955, 220 F.2d 65, decided in 1955, passed upon the following situation. The taxpayer was employed by the American Red Cross overseas in which service he remained for over two years. He then returned to the United States and resumed his former employment as Chief Counsel for the Federal Power Commission. The court said that "petitioner's intention upon going overseas was to return to the United States after serving abroad whatever period of time might be required." The taxpayer's contention that he came under the exemption provisions of Section 116 was denied.

Glackin v. United States, D.C.S.C.Ill., N.D.1952, 110 F.Supp. 372, 373, was decided by the District Court of the Southern District of Illinois, Northern Division. The taxpayer was employed in foreign countries by Trans-World Airlines. The court pointed out that during his stay in Iraq he became acquainted with influential citizens of that country, entered into their social life "and in other ways became acquainted with the people and customs of the countries in which he was employed." The court concluded as a matter of law that the taxpayer came within the provisions of Section 116, and entered judgment in his favor.

This court in the Downs case, Downs v. Commissioner, 9 Cir., 1948, 166 F.2d 504, 506, held on the facts there established that the taxpayers were not bona fide residents in foreign countries. The

facts in our Weible case are entirely different and can be readily distinguished from the Downs case, and brings itself within the rule of that case. In his opinion in the Downs case Judge Stephens pointed out that the contracts of employment there recited that the services would be related to the prosecution of the war, and were to be performed under all civil and military laws and regulations in effect from time to time at the place or places of duty. The taxpayers were there employed by Lockheed Aircraft Corporation for the purpose of organizing, equipping, and operating aircraft depots in England and Ireland as a part of the Allied war effort. As was said in the opinion:

"It will be seen that persons employed under the contract, and who performed services under it, were admitted to the foreign country for specific work directly related to the United States government's war efforts, and that they were handled, controlled and restricted much the same as military personnel."

After reviewing the legislative background of Section 116, and the 1942 amendment, Judge Stephens observed that

"The exemption provided in the statute before its amendment was intended to encourage foreign trade. Neither Hoofnel nor Downs was abroad on foreign trade; their situation had no relation to peace time economics. Their activities were wholly those of war performed in camps of the United States Government located in a foreign country for strategic purposes under limited consent of a foreign power."

Concluding, the court said:

"The simple recitation of the facts in these cases in connection with the foregoing analysis seems to us to unequivocally establish that petitioners were never 'residents' of the foreign countries in which they stayed during the tax year of 1943, and, therefore, do not qualify for the ex-

emption of taxes as claimed by them."

The court in the White case, supra, in acknowledging that the various courts were not in uniformity as to the application of Section 116, said:

"When we come to cases dealing with the statute in its present form, I find the most persuasive principles for its application in Judge Sibley's opinion in Swenson v. Thomas, 5 Cir., 164 F.2d 783, where the exemption was allowed to a taxpayer whose profession was that of a geophysicist who had spent four years in various countries of South America, having no fixed home anywhere, but paying some foreign taxes during the years involved. And on different but still comparable facts, the exemption was likewise allowed by Chief Judge Hincks in the District of Connecticut in Yaross v. Kraemer, D.C., 83 F.Supp. 411. Counsel for the defendant places his chief reliance on Downs v. Commissioner, 9 Cir., 166 F.2d 504, where the exemption was not allowed. But an examination of this latter case will show that Judge Stephens' opinion is not substantially different in principle from that of Judge Sibley in the Swenson case. The difference in result was due to the facts which were materially different from those of the instant case with respect to the nature of and reasons for the taxpayer's residence abroad."

After pointing out the different factual background in the Downs case, supra, wherein the taxpayers were in effect ex officio members of the United States military forces in time of war, aircraft technicians, the court in the White case said:

"* * * As the opinion shows, the taxpayers in that case [Downs] were not entitled to the exemption because, as explained by Senator George, Chairman of the Senate Committee on Finance, in the Congressional hearings on the proposed amendment of 1942, the purpose of the amendment was so that 'a nonresident American citizen who establishes a home, maintains his establishment and is taking on corresponding obligations of a home in a foreign country, may enjoy the exemption and * * * so that technicians, American citizens who are merely temporarily away from home could be properly reached * * * for taxation purposes.' The taxpayers in the Downs case were in the last mentioned category."

It was further pointed out in the White case that while the original Section 116, by its liberality, opened the door for much tax abuse, the 1942 amendment was not intended to abandon the principle of exemption based on equalizing the position of our nonresident citizens engaged in the crucial battle of foreign commerce, but merely to tighten the section so as to prevent the tax abuse that had grown up under it. It was natural, said the court, that in order to prevent the flagrant evasion practices under the original act the courts

"* * * applied the strict construction generally applicable as a rule of interpretation of tax exemptions, * * *."

Following the yardstick of the Downs case there is no difficulty in reaching the conclusion we have in the Weible matter, namely, that Weible was a bona fide resident in foreign countries during the tax years, and as such entitled to the Section 116 exemption.

This, and other similar cases, point up a practice on the part of administrative boards that appears to be on the upsurge and which runs against the current of democratic government, in this, that no sooner does Congress enact legislation falling within their sacred precincts than, through interpretative regulations, a process is begun to shape the legislation closer to their hearts desire, which more often than not curtails or entirely subverts the end that Congress intended to accomplish. The interpretation and application of Section 116 seems to be a prime example of administrative board

distortion. We see nothing sinister in the exemption allowed by Section 116, particularly since the possibility of tax evasion was practically eliminated by the 1942 amendment.

Appellee on numerous occasions in its brief referred to Weible as a "sojourner" in the countries in which he resided. Surely, on the basis of any definition, that was an unfair descriptive adjective to be applied to Weible. Then, again, it appears that there has been some unwarranted use of the words "residence" and "domicile," which, if not deliberate, was at least careless.

The appellee would also have us believe that one must practically renounce his American citizenship to acquire a Section 116 residence in a foreign country. We are reminded of threading the camel through the needle.

The income tax law has spread its tentacles into everyone's life, and into every phase of life. Presently it is the most important factor in the economic welfare of our citizens. At its best there is much to be wondered at, both in the reading and the administrative application. Humble citizen to multi-millioned corporation has the right to assert and take every benefit available. This without stigma attached. It appears, to this writer, at least, that in relation to these exemption statutes the attitude of the bureaus responsible for their administration have too long been "try and get it." Such was not the intent of Congress.

The judgment is reversed and the case remanded with directions to enter judgment for the plaintiffs, appellants here.

POPE, Circuit Judge (concurring).

I concur in all of the foregoing opinion with the exception of the comment in the last five paragraphs respecting the administrative practices of the Bureau officials. To my mind the income tax law as we have it is an inevitable concomitant of a highly organized society. Those whom we charge with its collection would not be doing their duty if they were not alert to see that it is collected. I have the impression that, by and large, the Bureau officials do a pretty good job even if they are not always right. And in a close case like this, where the judges themselves are in disagreement, I believe it the duty of the Commissioner and his counsel to present the Government's side of the case as they have done here.

LEMMON, Circuit Judge.

I dissent.

The effect of the majority opinion is to permit an American citizen temporarily present in Australia who escaped liability for income tax in that country through the claim there made that he resided in the United States to avoid payment of income tax here through the assertion that he was resident of Australia during the same period of time. Such a result should be avoided if possible.

The majority appears to concede that intent is one of the elements of residence. The intention is to remain at a place permanently or for an indefinite time.

Like other questions of fact, residence may be established by circumstantial evidence. The circumstances set forth in the majority opinion supplemented by those in this opinion adequately sustains the trial court's finding: at least that findings and the judgment thereon are not clearly erroneous.

The majority opinion states that Weible agreed with his employer "to remain permanently outside the United States in the performance of these duties except for short periods of training and consultation". This is inaccurate.

It is more accurate to state, in the words of Michael Harris, vice president and head of the export division of Max Factor & Co., in answer to a question as to the nature of Weible's employment, "He was to come in for a period of preliminary training, to sort of have a refresher course and immediately go overseas, with the first installation to be in Australia, and from then on, whenever required." There was no written contract. "We operated on a very informal basis." As to the length of sojourn in

any foreign country, Harris testified, "For each assignment it was completely indefinite, because we had no idea how long it would take to establish a plant. He would stay with an operation until he thought it was on its feet and ready to move to another location." Weible testified that there was no specific understanding with respect to the length of time of his foreign assignments.

When Weible left for Australia his then wife remained in California. It had been decided that she would maintain the apartment they occupied in North Hollywood. The household furniture was left with her. While absent from California he purchased her joint interest in an unimproved lot located in Los Angeles and during the tax periods in question made substantial payments on a trust deed which encumbered the property. In Australia he rented a furnished apartment, supplementing the furnishings by certain household goods which he purchased there. There he employed a housekeeper. During his absence he maintained a bank account in Los Angeles in which his employer deposited his monthly salary checks. In Australia he secured exemption from the Australian income tax through his claim in writing that he was a non-resident of Australia and that he was a resident of the United States and that he contemplated leaving Australia in November of 1947.

The operations in Australia required a longer time than was anticipated and so he remained in that country until October, 1948. He married his present wife in the United States, though he had met her during his stay in Australia. He kept up his membership in a private club in Los Angeles during the years he remained outside the United States.

Weible did not buy or establish a permanent home in any of the countries to which his work took him.

It is apparent that Weible's tour of duty in a foreign country was temporary, though the length of his stay was uncertain.

The majority attempts to belittle the importance and significance of Exhibit "A", Weible's application through which he claimed and obtained exemption under Australian taxing statutes and in which application he stated that his place of residence was the United States and that he intended to return to the United States within six months to reside permanently. This statement has much bearing upon the bona fides of the statement of Weible's claim of residence in Australia and in the other countries in which he sojourned. His statement truthfully characterized his stay in Australia. It was not his intention to remain for a definite period of time. It was his intention to move from one foreign country to another in connection with his duties. He could not know the precise date of his departure from a foreign country, but he did know that upon completion of his mission there he would be assigned to another foreign country after a brief intermission in the United States. The trial judge correctly found that his status was that of a transient or sojourner.

The exemption runs in favor of "an individual citizen of the United States who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States," etc. The taxpayer failed to so satisfy the Commissioner and the court below decided that he had not sustained the burden of proof which he bore. The evidence clearly supports the conclusion that Weible had merely "a floating intention, indefinite as to time".

The majority opinion states that the question of residence is a mixed question of law and fact; that this court is not bound by the "clearly erroneous" rule; and that we may substitute our own conclusions upon the facts and law.[1]

---

1. That this is against the weight of authority, see 5 C.J.S., Appeal and Error, § 1642d. I agree, nevertheless, that where, as here, the evidence is not in conflict the conclusion of law drawn therefrom is reviewable.

However, in any event, the conclusions which the trial judge drew should be accorded much weight and should not be brushed aside in the cavalier manner followed by the majority. In my view the ruling of the trial judge was proper in the light of the facts and circumstances which were developed at the trial and the judgment should be affirmed.