A. Eugene Adams and Ruth C. H. Adams v. Commissioner.
Adams v. Commissioner
Docket No. 144-62.
United States Tax Court
T.C. Memo 1963-241; 1963 Tax Ct. Memo LEXIS 101; 22 T.C.M. (CCH) 1215; T.C.M. (RIA) 63241; September 10, 1963
Paul R. Russell, 20 Exchange Place, New York, N. Y., for the petitioners. Frederic S. Kramer and Lee A. Kamp, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined deficiencies in petitioners' income tax for the years and in the amounts as follows: Year
Amount
1957
$ 891.07
1958
4,144.32
By an amendment to their petition, petitioners claim an overpayment for 1957 in the amount of $3,606.20. The issues presented for our decision *102 are (1) whether petitioner A. Eugene Adams was a bona fide resident of a foreign country for an uninterrupted period which included the entire taxable year 1957 within the meaning of section 911(a) of the Internal Revenue Code of 1954, and (2) whether petitioner was a bona fide resident of a foreign country for an uninterrupted period which included the entire taxable year 1958. Findings of Fact The stipulated facts are found as stipulated. Petitioners are husband and wife residing at New Rochelle, New York. The husband will at times be referred to as petitioner. They filed joint income tax returns for the years 1957 and 1958 with the International Operations Division of the Internal Revenue Service, Washington, D.C.
Petitioner A. Eugene Adams has been employed by the First National City Bank of New York, sometimes hereinafter referred to as the Bank, continuously since 1929. From May 27, 1952, to November 6, 1957, he was an assistant comptroller of the Bank. Since November 6, 1957, his position has been that of an assistant vice president. Prior to August 17, 1956, petitioner was employed in the headquarters office of the Bank in New York City where *103 he was assigned to the Administrative Section of the Comptroller's Division. As of August 17, 1956, petitioner's duties were classified by the Bank as "Overseas Inspections." During the period January 1, 1957 to October 29, 1957, while he was assigned to "Overseas Inspections" work, he traveled extensively outside the United States, making stops of the indicated length in the following countries: Country
Days
Hong Kong
31
Thailand
2
India
52
Lebanon
11
Egypt
26
Lebanon
8
Saudi Arabia
9
England
38
France
35
Belgium
4
Germany
4
Switzerland
2
Bermuda
1 Petitioner had no intention of remaining in any of the countries he visited on his overseas itinerary. Each of his trips to such foreign countries was made for a specifically defined purpose. After completing his overseas itinerary on August 14, 1957, he reported to the Bank on the results of his work and thereafter took a vacation in the United States. During the period January 1, 1957 to August 14, 1957, while traveling abroad in overseas inspection work, petitioner was unaccompanied by his wife. He lived only in hotels and never rented an apartment. He paid no taxes to any of the countries *104 he visited during the period January 1, 1957 to August 14, 1957. Throughout the time he was absent from the United States during 1957, he maintained his dwelling in New Rochelle, New York, where his wife and family resided. Petitioner was not a resident of a foreign country or countries during the period January 1, 1957 to October 29, 1957. On October 29, 1957, petitioner was transferred to the "Overseas Division" of the Bank. Commencing on October 29, 1957, petitioner's position was that of Assistant Vice President of the Middle East and Africa Representative Office of the Overseas Division, with headquarters in Beirut, Lebanon. He assisted the vice president in charge of that office, and reported to him and to the management of the Overseas Division. According to the Bank's records, petitioner remained on the Overseas Division payroll until after his return to the United States in January 1959. On October 29, 1957, petitioner left the United States and on October 31, 1957, arrived in Beirut, Lebanon. His wife and two daughters joined him in Beirut during December 1957. Civil disturbances arose in Lebanon during 1958 and the American Embassy requested American families to *105 leave Beirut. Petitioner's wife and children left Beirut in May 1958 and went to Jeddah, Saudi Arabia. On or about October 31, 1958, his wife and children returned to Beirut. The Bank, by a letter dated August 14, 1958, directed petitioner to terminate his work in the Middle East "by the end of the year." On December 16, 1958, petitioners and their children left Beirutt, Lebanon. From December 16, 1958 to January 10, 1959, petitioner with his wife and children took his regular annual 1958 vacation in Turkey, Greece, Germany, Austria, Switzerland, and Portugal. They returned to New York on January 11, 1959. Upon leaving Beirut on December 16, 1958, petitioners made arrangements to give up their apartment, and they also made arrangements with the Bank's personnel there to have their household effects shipped to New Rochelle, New York. Petitioners received a refund for advance rental payments on their apartment. After petitioners' departure from Beirut, their household effects were shipped to New York. When petitioner left Beirut, Lebanon, on December 16, 1958, he had no expectation of ever returning to Beirut and had no knowledge of the location of his next assignment. Petitioner *106 was a resident of Beirut, Lebanon, from November 1, 1957 to December 16, 1958. Ultimate Finding Petitioner was not a bona fide resident of a foreign country for an uninterrupted period which included either the entire taxable years 1957 or 1958. Opinion Section 911(a)(1) of the Internal Revenue Code of 1954 provides for the exemption from taxation of income earned by a United States citizen who is a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year. [1]
*107 Petitioners claim that the entire amount of the salary received by A. Eugene Adams during 1957 and 1958 qualifies for exemption under the provisions of section 911(a)(1) of the 1954 Code because, they contend, he was a bona fide resident of a foreign country or countries throughout each of those years. The respondent has taken the position that petitioners are not entitled to claim the exemption provided in section 911(a)(1) for either 1957 or 1958 because they have failed to establish bona fide residence in a foreign country or countries during either of those years. With respect to the year 1957, petitioners have failed to establish that A. Eugene Adams was a resident of a foreign country or countries prior to October 31, 1957, when he arrived in Beirut, Lebanon. From January 1, 1957 to August 14, 1957, petitioner traveled to 12 countries, stopping for lengths of time varying from 1 day to 52 days. Throughout this period of approximately 7 1/2 months he lived only in hotels in the countries he visited, and his wife and children did not accompany him, but continued to live in his home located at New Rochelle, New York. The record discloses that the nature of petitioner's visits *108 to foreign countries in his itineration during the first 7 1/2 months in 1957 was such that extended stays were not required. His trips were made for a definite purpose, which was usually accomplished within a relatively short period of time. He paid no taxes to any of the countries he visited prior to August 14, 1957. Petitioner testified at the trial that he had no intention to remain or reside in any of the countries the Bank required him to visit during the course of his itinerary during the first 7 1/2 months of 1957. Subsequent to petitioner's return to the United States, on August 14, 1957, he made reports to the Bank on his overseas inspection work and thereafter went on vacation. The facts presented by the record herein differ substantially from the situation presented in Weible v. United States, an unreported case (S.D.Calif. 1956), reversed 244 F. 2d 158 (C.A. 9, 1957). There, the taxpayer accepted assignments from his employer requiring him to travel to foreign countries for the purpose of constructing manufacturing plants and training operating personnel. He agreed to remain permanently outside the United States except for short periods of consultation. *109 In carrying out his overseas assignments, the taxpayer lived in Mexico from January to May 1946; in Australia from June 1946 to October 1948; in Canada from October 1948 to July 1949; and in England from July 1949 to December 1950. He established business and social contacts in each of the above-mentioned countries. The District Court found that the taxpayer was merely a sojourner in each of these countries. The Court of Appeals for the Ninth Circuit reversed, holding that the taxpayer was a bona fide resident of each country in which he carried out assignments. In our opinion, the differences between the relatively short periods of time in which petitioner stayed in the countries in which he itinerated from the much longer periods of residence involved in Weible v. United States, supra, together with the absence of any evidence here indicating that petitioner established close relationships with the local community, serve readily to distinguish that case from the facts before us. Consequently, in view of the foregoing, we are of the opinion that petitioner was not a resident of any foreign country or countries prior to his arrival in Beirut, Lebanon, on October 31, 1957, but rather *110 was merely a sojourner or transient while traveling abroad in overseas inspection work during 1957, and therefore failed to qualify during that year for the exemption provided by section 911(a)(1) of the Code. The respondent concedes that petitioner established bona fide residence in Beirut, Lebanon, during the period October 31, 1957 to December 16, 1958. He contends, however, that petitioner abandoned his residence in Beirut upon his departure on December 16, 1958, and therefore was not "a bona fide resident * * * for an uninterrupted period which includes * * * [the] entire taxable year." Petitioners claim that A. Eugene Adams did not abandon his foreign residence in Beirut until his return to the United States on January 11, 1959, and that he therefore qualified as a bona fide resident of a foreign country throughout the year 1958 within the meaning of section 911(a)(1) of the 1954 Code. Petitioner accepted his assignment by the Bank to its Middle East and Africa Office with the understanding that it would be of indefinite duration. After his arrival in Beirut, Lebanon, on October 31, 1957, he rented an apartment for himself, his wife, and two children. His wife and family *111 were temporarily evacuated to Jeddah, Saudi Arabia, for approximately 5 months during 1958 because of civil disturbances in Lebanon. Upon the termination of petitioner's assignment with the Middle East and Africa Office of the Overseas Division of the Bank in 1958, he and his wife and family left Beirut on December 16, 1958. Prior to his departure he canceled the lease on his apartment, receiving a refund of rent for the unexpired term of the lease, and made arrangements for the shipment of his household furnishings and personal belongings to New Rochelle, New York. When petitioner left Beirut, he knew that his assignment there was completed, and he stated at the trial that he had no expectation of returning. Upon his departure from Beirut, petitioner took his regular annual 1958 vacation, traveling with his wife and family through Turkey, Greece, Germany, Austria, Switzerland, and Portugal, returning to New York on January 11, 1959. A situation closely parallel to the facts presented here was involved in Seeley v. Commissioner, 186 F. 2d 541 (C.A. 2, 1951), affirming on this issue, Robert W. Seeley, 14 T.C. 175 (1950), rehearing denied 186 F. 2d 541 *112 (C.A. 2, 1951). The Court of Appeals there held that the taxpayer, who was living in England for a substantial portion of 1944 while carrying out an assignment by his employer, General Motors Corporation, had not established a bona fide residence in a foreign country throughout that year within the meaning of section 116(a)(1) of the 1939 Code (corresponding to section 911(a)(1) of the 1954 Code), because he left England a few days prior to the expiration of a full year's stay, returned to the United States, and took a vacation. In its opinion the court distinguished between a temporary absence which interrupts a continuous stay in a foreign country to which the taxpayer intends to return, and a final departure by which he abandons his foreign residence. It pointed out that, when the taxpayer left England in 1944, his assignment was completed and he had no intention to return; therefore, upon his departure to the United States, he had abandoned whatever residence he previously may have established. Although it is true, as petitioner contends, that bona fide residence in a foreign country is not necessarily destroyed by temporary business or vacation trips to the United States ( *113 Leonard Larsen, 23 T.C. 599 (1955)), we are convinced from the record that upon his departure from Beirut on December 16, 1958, petitioner severed all his ties there and had no intention of returning. Consequently, it clearly appears that he abandoned his foreign residence on that date. It is also clear that, during the course of his vacation tour through Europe during the latter part of December 1958 and the early part of January 1959, petitioner was a transient or sojourner, and did not establish residence in any of the countries visited. For the foregoing reasons, we hold that petitioner was not a bona fide resident of a foreign country or countries for an uninterrupted period which included an entire taxable year within the meaning of section 911(a)(1) of the 1954 Code during either 1957 or 1958. Decision will be entered for the respondent. Footnotes
1. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (a) General Rule. - The following items shall not be included in gross income and shall be exempt from taxation under this subtitle: (1) Bona Fide Resident of Foreign Country. - In the case of an individual citizen of the United States, who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income (as defined in subsection (b)) attributable to such period; but such individual shall not be allowed as a deduction from his gross income any deductions (other than those allowed by section 151, relating to personal exemptions) properly allocable to or chargeable against amounts excluded from gross income under this paragraph.↩