**WHITE v. HOFFERBERT, Collector of Internal Revenue.**

Civ. A. No. 4444.

United States District Court
D. Maryland.

Feb. 3, 1950.

Robert W. Williams, Baltimore, Md. (Ober, Williams, Grimes & Stinson, Baltimore, Md.) for plaintiff.

Bernard J. Flynn, U. S. Atty., Frederick J. Green, Jr., Asst. U. S. Atty., Baltimore, Md., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, John W. Fisher, Spec. Assts. to Atty. Gen., for defendant.

CHESNUT, District Judge.

This case concerns the proper amount of liability of Francis White for federal individual income taxes for the years 1943, 1944 and 1945. The taxpayer, in making his returns for those years, excluded from his income the amounts which he had received as salary for personal services from

sources without the United States while he was a bona fide resident of foreign countries. The exclusion was based by the taxpayer on the provisions of section 116(a), of the Internal Revenue Code as amended in 1942, 56 Stat. 841, 26 U.S.C.A. § 116(a). But the Commissioner determined a deficiency for each of the years and upon notice thereof the taxpayer paid the whole amount of the deficiency with interest amounting to $21,722.02, on September 3, 1948. Thereafter in due course the taxpayer filed petitions for refund and upon their disallowance instituted suit in this court against the Collector to recover the alleged overpayment.[1]

The case has been heard upon the pleadings and evidence and oral arguments and briefs of counsel. The principal evidence was the quite extended testimony of the taxpayer given in open court subject to cross-examination. His evidence was on essential points corroborated by the deposition of Col. Behn, President of the International Telephone & Telegraph Co. The defendant's affirmative evidence consisted only of a few exhibits which, for reasons hereinafter stated, I regard of little significance in the case.

As a mixed question of law and fact, I find and conclude that the taxpayer's position is correct and that he is entitled to recover the overpayments with interest.

The principal and indeed the only issue in the case is whether on the facts the taxpayer was a bona fide resident of foreign countries during the entire taxable years involved, within the meaning of the Revenue Code, § 116(a) (1). The physical facts are not really in dispute. Francis White, a member of a well-known Baltimore family, was born March 4, 1892, and was therefore just over fifty years of age during the tax years in question. For some years prior to 1933 he had been engaged in the Diplomatic Service of the United States and stationed in the Capitals of various foreign countries. In 1933 he resigned from the Diplomatic Service and

for a year or so was employed by the International Telephone & Telegraph Co., of which Col. Behn was the president, and with whom Mr. White had some acquaintance in foreign countries. Thereafter the taxpayer became and was for many years President of the Foreign Bondholders Committee at a salary of $15,000 a year. In November 1942 he again accepted a position with the I. T. & T. Co., to become one of its "foreign service officers" for an indefinite period. He was promptly assigned to be its chief resident officer in Sweden, and in December 1942 he arrived in Stockholm and actually resided there for the whole of the year 1943 and until February 6, 1944, when he was assigned by his Company to go to Spain. While in Sweden he was a vice-president of the International Standard Electric Corporation (a subsidiary of the I. T. & T.) a holding company for certain foreign companies engaged in the manufacture of telephone equipment. One of the wholly owned companies of the Electric Company was the Standard Radio Fabrik, a Swedish corporation, and the I. T. & T. Co., also held directly or indirectly a 30% interest in another Swedish corporation engaged in similar activity, and Mr. White became a member of its Board of Directors. His salary as vice-president of the Electric Company was at the rate of $18,000 a year.

During his residence in Stockholm in 1943 Mr. White lived at a hotel but daily visited the business offices or conferred with other officers of the Companies. His whole time was occupied in promoting the interests of the business and in accordance with the proper interests and policies of the United States. The taxpayer is married and has one daughter. When he accepted service with the I. T. & T. he gave up his apartment in New York and his wife moved to a hotel and his daughter went to an American school or college. Owing to wartime restrictions it was not possible to obtain passports for his wife and daughter to accompany him to Sweden and this continued to be the travel situa-

---

1. The amount of deficiency with interest for the several years was as follows: For 1943, $6,364.04; for 1944, $6,253.39; for 1945, $9,104.59.

tion until June 1945 when his wife and daughter joined him in Madrid.

As heretofore stated, Mr. White was transferred to Spain in February 1944 and continued to be the chief active officer of the I. T. & T. in that country until December 1946, returning, however, on several occasions to the United States when summoned back by Col. Behn to confer with the principal American officers of the I. T. & T. and with the State Department at Washington with respect to the Spanish situation as it particularly affected the interests of the I. T. & T. in that country. Spain is only one of the foreign countries in which the I. T. & T. has very large interests; but the situation in 1944 and for some time thereafter was very critical and highly important in relation to the property interests of the I. T. & T. in the Spanish telephone industry. This is told in interesting and important detail in the testimony of Mr. White.

Very briefly stated, the situation was that prior to 1924 telephone service in Spain consisted of many separate and non-integrated companies with great confusion, difficulty and delay in making long distance calls. In 1924 practically all the separate telephone companies in Spain were bought or otherwise acquired by the I. T. & T., which obtained a governmental franchise from the Government of Spain. One important feature of the franchise was that at the end of twenty years, on two years' prior notice, Spain reserved the right to buy out the property interests of the I. T. & T. in the integrated telephone industry in that country on certain terms and conditions and on a basis of valuation therein specified. The highly critical and important situation which existed in 1944 arose from the fact that the Government of Spain, according to the evidence given by Mr. White, was insisting upon its right to take over the whole of the telephone industry on terms which the I. T. & T. regarded as a substantial departure from the franchise conditions, especially with regard to the basis of valuation.

After the negotiations had finally resulted in a settlement it was stipulated that the I. T. & T. should for a period of years continue to operate the telephone system after it had been acquired by the Spanish Government. Mr. White's former Diplomatic Service experience and resultant acquaintance with many foreign Diplomats, made him a very valuable officer of the I. T. & T. And the highly critical and important negotiations between the I. T. & T. and the Spanish Government in 1944 and 1945 necessitated the Company calling Mr. White back to the United States for consultation with its officers here and also with the State Department at Washington. Thus on March 15, 1944 Mr. White was called back to the United States for consultation, returning to Spain on July 22nd of that year. Again in the same year he was called to this country in November and this time by reason of various unexpected delays in war time he was unable to return to Spain until June 1945. After V-E Day in May 1945 it became possible for the first time for Mr. White to take his wife and daughter to Spain, which he did at the first available sailing in June 1945. In January 1946 he left his wife and daughter in Madrid to return to New York for consultation with his Company, and returned to Madrid the end of January 1946. Mrs. White became ill in Madrid in the spring of 1946 and she returned to the United States in May 1946 while Mr. White remained in Spain until July 1946 when he returned to the United States for a vacation, returning to Spain in September 1946 and continuing as vice-president of the I. T. & T. in that country. Meanwhile Mrs. White's mother had become ill and for that reason she remained in the United States until her mother's death in December 1946. Upon learning of his mother-in-law's critical illness Mr. White flew back to the United States. In January 1947 the I. T. & T. changed Mr. White's assignment to New York and thereafter he continued as a vice-president in the New York office for some time. At present he and his family are now again resident in Baltimore where he is a vice-president of the Baugh Chemical Company and a resident executive trustee of the Johns Hopkins University. His family home is in Baltimore City. His domicile has throughout continued to be in

Baltimore. See 28 C.J.S., Domicile § 13, page 30; District of Columbia v. Murphy, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329.

The taxpayer did not pay any income tax either to Sweden or Spain during the years of his residence there. No demand was ever made upon him for such a payment and he did not know as a matter of law whether there was an income tax applicable to him in either of those countries during his residence.

My conclusion on these facts is that the taxpayer was a bona fide resident of Sweden and Spain respectively in each and all of these three years. There would seem to be little or no question at all about the year 1943 during the whole of which Mr. White was physically resident in Sweden; and I think it is also true that he was a bona fide resident within the meaning of the statute in Sweden and later in Spain in the years 1944 and 1945. While his period of actual physical stay in the United States both in 1944 and 1945 was quite considerable (not quite six months for either year) it is clear on the facts that the absences from the foreign countries in each case were for urgent business reasons in no way due to the volition of the taxpayer. His original engagement as a foreign service officer of the I. T. & T. in November 1942 was for an *indefinite period,* and it is entirely reasonable to find that his intention was to remain in the foreign service of that Company as a career or at least for many years. On each occasion of his return to the United States during 1944 and 1945 his intention was to return to Spain as soon as the particular business here permitted. It is to be noted that when the taxpayer made his returns for 1944 and 1945 he included in his taxable income that proportion of the years' salary from the I. T. & T. which was represented by the number of days in the year that he was here; because that much was not earned for services abroad and therefore not exempt by the statute. All this was carefully explained by him in a memorandum filed with his returns for 1944 and 1945. On hearing the taxpayer's extended testimony I found him a highly credible and very well informed witness, and have no difficulty in finding his expression of intentions with regard to his foreign residence were in entire good faith. There is not the slightest suggestion in the case of any attempt by him to evade taxes. His foreign residence was solely due to the important business interests of the I. T. & T. in European countries. His case seems fairly typical of many citizens of the United States who accept foreign service for American enterprises with large interests abroad.

The only item of evidence introduced by the defendant in any way tending to contradict the taxpayer was his statement in filling out a printed form of "Application for Registration" before the United States Vice Consul at Stockholm in which, after stating other factual matters with regard to the age, occupation and citizenship of himself and his wife, there was a short sentence reading "I intend to return to the United States within six months to reside permanently". Divorced from its context this statement would, of course, be entitled to ponderable weight as bearing upon the bona fides of the taxpayer with respect to the duration of his employment for the I. T. & T. and his intended residence in Sweden. However, the statement was entirely satisfactorily explained by the taxpayer. His explanation was that the printed form for application of registration referred to had relation only to the matter of the validation of his passport which had been issued to him on October 21, 1942, and that under the then war conditions the passports were good for only six months and not for two years as formerly. For this reason, and only for this reason, there was inserted in the form the period of six months with respect to the expected continued duration of his residence in Sweden. The evidence taken as a whole is entirely satisfactory and convincing that the particular statement under the circumstances did not contradict the main and really undisputed facts of the case.

The conclusion reached is consistent with the wording of the statute; with its evident purpose as revealed by its legislative history; with the regulations issued by the Commissioner, and by judicial decisions

under the statute involving comparable facts.

As amended in 1942 the statute reads:

"Sec. 116. In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

"(a) Earned income from sources without the United States.

"(1) Foreign resident for entire taxable year. In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a *bona fide resident of a foreign country or countries during the entire taxable year,* amounts received *from sources without the United States* (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income as defined in paragraph (3); but such individuals shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection." (Italics supplied.)

"Sources without the United States" are defined in section 119 reading:

"(c) *Gross income from sources without United States.* The following items of gross income shall be treated as income from sources without the United States:

\*    \*    \*    \*    \*    \*

"(3) Compensation for labor or personal services performed without the United States."

Same repeated, Regulation 111, sec. 29; 119-7(3).

As applied to the facts in this case the statute clearly exempts income on two conditions, (1) that the taxpayer was during the entire taxable year a bona fide resident of a foreign country, and (2) that the income excluded was for salary for services performed without the United States. These two conditions were clearly met for the calendar year 1943, during the whole of which the taxpayer was physically in Sweden and the whole of his salary was earned for services there performed during the year.

The defendant's contention that the taxpayer was not a bona fide resident of a foreign country in any of the three years was pitched principally if not solely on the fact that he did not pay income taxes in either Sweden or Spain and, because he did not sufficiently "concern himself" with the laws of the country to learn whether there was an income tax law applicable to him, he could not be said to be a resident of the country. It is further argued that the main, or at least a very important, purpose of the statute was to avoid double taxation. The defendant's argument is not convincing for several reasons. In the first place the statute does not condition the exemption upon either the actual payment of or the liability for foreign taxes. Thus, in applying sec. 116(a) (2) of title 26, it was said by the Court of Claims in Chidester v. United States, 82 F.Supp. 322, 326: "The Government urges that the exemption granted by Section 116(a) (2) is somehow contingent upon the payment of income taxes for the period in question to the foreign country where the taxpayer resided when the income in question was earned. The avoidance of double taxation may well have been one of the motives for the enactment of the section, but the language does not make the imposition of taxes by or their payment to a foreign government a condition precedent to the permitted exclusion. We conclude, therefore, that the plaintiff may recover $1755.52 with interest as provided by law." While the avoidance of double taxation may well have been one of the contributing inducements to the passage of the Act, its broader purpose and ultimate objective was to encourage our foreign trade. The avoidance of double taxation seems to have been the more particular purpose of title 26, sec. 131, providing for credits against the United States tax of amounts paid for certain foreign taxes, and of the several conventions between the United States and other countries granting reciprocal exemptions from certain taxes. See Hubbard v. United States, 17 F.Supp. 93, 84 Ct.Cl. 205.

The fact that the taxpayer did not pay foreign taxes is relevant but not of itself conclusive or controlling. It is only

one of many facts constituting the whole evidence in the case. In the particular case I think it has very little weight in the whole problem because the case must be looked at in its entirety and the conclusion should not be based on some one single fact which is not of itself absolute in effect. See Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210. It might properly have much more weight in a different setting of facts, as, for instance, if the demand had been made upon the taxpayer to pay the foreign taxes and he had successfully resisted it on the ground that he was not a resident of the country.

Counsel for the defendant has offered in evidence certain papers for the purpose of showing that both Sweden and Spain had in force income taxes for the respective years involved which would have been applicable to Mr. White. These papers consisted of the 1939 convention between Sweden and the United States with respect to avoidance of double taxation, and the translation of a Spanish statute passed in a prior year. While it is quite probable that both Sweden and Spain did have income taxes of some nature, it is very far from clear that the papers showed the existence of personal income taxes in either country for the year involved applicable to the taxpayer. In other words, I cannot find from these papers that Mr. White incurred a liability for Swedish or Spanish income taxes on his salary from the I. T. & T. or its subsidiary. But if it be assumed that the papers do show this and that the purpose of our exemption statute was to avoid double taxation, it would seem clear enough that the purpose would be gratified by establishing the liability for the tax as well as by the payment; because if there was liability presumably the foreign coun-

try could enforce it against the taxpayer here.

From the legislative history of the Act it appears that the statute was originally enacted in 1926, 44 Stat. 23, for the purpose of encouraging our foreign trade by enabling United States citizens engaged in business in a foreign country to compete with other Nationals there engaged.[2] As then enacted, and until the amendment of 1942, section 116(a) read as follows, exempting: "(a) Earned income from sources without United States. In the case of an individual citizen of the United States, a bona fide non-resident of the United States for more than six months during the taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25(a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection."

It will thus be noted that the early enactment contained the exemption of foreign earned income if the taxpayer was a bona fide *non-resident* of the United States for more than six months during the taxable year. In practical administration it was found, or at least thought, that the exemption so granted was abused by taxpayers who, not for genuine business purposes but mainly for tax evasion, simply absented themselves from the United States for more than six months during the taxable year. In consequence of this experience, in 1942, the House passed a bill entirely repealing the exemption. But the Senate did not agree.[3] It passed an amendment re-

2. See H.R.No.1, 69th Cong. 1st Sess. p. 7; S.R.No.52, 69th Cong. 1st Sess. pp. 20–21; House Conference Report No. 356, 69th Cong. 1st Sess. p. 33, and Swenson v. Thomas, 5 Cir., 164 F.2d 783; Commissioner v. Fiske's Estate, 7 Cir., 128 F.2d 487; Downs v. Commissioner, 9 Cir., 1948, 166 F.2d 504, certiorari denied 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759; Klein, Federal Income Taxation, pp. 180, 181 (1929).

3. Senate Report No. 1631, 77th Cong. 2nd Sess. stated:

"This provision of the present law has suffered considerable abuse, in the case of persons absenting themselves from the United States for more‧ than six months simply for tax-evasion purposes. To stop this abuse, the House Bill repealed section 116(a).

"From cases brought to your committee's attention, the complete elimination

taining section 116(a) but changing the test for exemption from one of non-residence for six months to one of bona fide residence in a foreign country during the entire taxable year. The House receded and section 116(a) as amended by the Senate bill became effective for the tax years subsequent to 1942. As a result of the change in wording, the reasonable inference for statutory construction is that the proper emphasis as to the test has shifted from a mere matter of time of absence from the United States to a determination of *bona fides of foreign residence* for the whole year.

Does the application of the wording of the statute require a different conclusion for the years 1944 and 1945, by reason of the considerable absence in point of time of the taxpayer from the foreign countries? I conclude that it does not. Defendant's counsel makes no distinction between the respective years as to the propriety of the exemption. His contention is that in none of the years was the taxpayer a bona fide resident abroad. At first blush it might be thought that the changed wording of the statute requiring bona fide residence abroad for the *entire taxable year* would literally debar exemption for 1944 and 1945. But when we examine the legislative history, and especially the Senate Committee Report on the amendment and the Commissioner's regulations for administering it, we find that if the taxpayer was a bona fide foreign resident in the foreign country, his *temporary* absence therefrom on business or vacation trips does not defeat the exemption. In this connection it is important to note that the Senate Report on the wording of the amendment as subsequently enacted stated that "vacation or business trips to the United States during the taxable year will not necessarily deprive the taxpayer, otherwise qualified, of the exemption provided by this section." And the regulations contain the same provisions.[4] They also provide, among other

---

of this section would work a hardship in the case of citizens of the United States who are bona fide residents of foreign countries. For example, many employees of American business in South America do not return to the United States for periods of years. Such persons are fully subject to the income tax of the foreign country of their residence. Your committee has adopted a provision which it is believed will effectively terminate the abuse of this section but at the same time will not unduly penalize our citizens who are bona fide residents of a foreign country during the entire taxable year they earned income from sources without the United States will be exempt. * * *

"In lieu of the repeal of this section, your committee recommends that subsection (a) be amended so as to change the test there provided to one of residence in a foreign country or countries during the entire taxable year. In the application of such provision, the tests as to whether a taxpayer is a resident of a foreign country or countries will be those generally applicable in ascertaining whether an alien is a resident of the United states. *Vacations or business trips to the United States during the taxable year will not necessarily deprive a taxpayer, otherwise qualified, of the exemption provided by this section. * * *"*. (Italics supplied.)

4. Regulations 111 contain the following sections applicable to the present problem:

Section 29.116–1 (492 CCH 840):

"(850) Reg. 111, sec. 29.116–1. Earned income from sources without the United States.—For taxable years beginning after December 31, 1942, there is excluded from gross income earned income in the case of an individual citizen of the United States provided the following conditions are met by the taxpayer claiming such exclusions from his gross income:

"(a) It is established to the satisfaction of the Commissioner that the taxpayer has been a bona fide resident of a foreign country or countries throughout the entire taxable year; (b) such income is from sources without the United States; (c) such income would constitute earned income as defined in section 25(a) if received from sources within the United States for taxable years, beginning before January 1, 1944, or as defined in section 116(a) (3) for taxable years beginning after December 31, 1943; and (d) such income does not represent amounts paid by the United States or any agency or instrumentality thereof. Hence, a citizen of the United States taking up residence without the United States in the course of the taxable year

things, that the test of residence of an alien in this country for tax purposes shall likewise apply to our citizens when abroad. In the regulation, therefore, it is stated "an alien actually present in the United States who is not a mere *transient* or *sojourner* is a *resident* of the United States for purposes of the income tax." (Italics supplied.) It is very plain that Mr. White was not merely a transient or sojourner in either Sweden or Spain. See Swenson v. Thomas, 5 Cir., 164 F.2d 783, 784; and Bowring v. Bowers, 2 Cir., 24 F.2d 918, 919, 923.

In the instant case the facts clearly establish that the taxpayer, as a foreign service officer of the I. T. & T. Co., was transferred from Sweden to Spain in 1944, and became a resident of Spain with the expectation that his stay there would be of indefinite duration. He was called back to the United States by his Company for highly important business reasons for two different periods during the calendar year; but, viewing the evidence as a whole it is

clearly demonstrated that his return to the United States was for a bona fide business purpose of a highly important nature to his Company and in time of war when extraordinary travel conditions existed, some of which were responsible for his not sooner returning to Spain. It is clear that when he came back to the United States he had the definite intention of returning to Spain as foreign service officer of the I. T. & T. Co., as soon as the particular business here for his Company was concluded.

When we come to a consideration of the judicial decisions on the statute, it is, of course, necessary to distinguish between those involving the original statute and those more recent ones dealing with the statute as amended in 1942. The original statute pitched the exemption on the non-residence in the United States of the taxpayer for six months of the year; while the present statute makes the test "bona fide residence in a foreign country or countries for the entire year". With respect to the important question of residence the

is not entitled to such exemption for such taxable year. *However, once bona fide residence in a foreign country or countries has been established, temporary absence therefrom in the United States on vacation or business trips will not necessarily deprive such individual of his status as a bona fide resident of a foreign country.* Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined in general by the application of the principles of sections 29.211–2, 29.211–3, 29.211–4, and 29.211–5 relating to what constitutes residence or non-residence, as the case may be, in the United States in the case of an alien individual." (Italics supplied.)

It will be noted that the section above quoted refers to the sections on aliens for the test to determine a bona fide residence. Section 29.211–2 (493 CCH 1251 and 1252) provides:

"(1251) Reg. 111, Sec. 29.211–2. Definition.—A 'non-resident alien individual' means an individual—

"(a) Whose residence is not within the United States; and

"(b) Who is not a citizen of the United States.

"The term includes a non-resident alien fiduciary.

"(1252) An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere *fleeting* intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances. (Reg. 111, Sec. 29.211–2)."

original statute was negative in form as to the residence in the United States. That is to say, if the taxpayer could prove that he was *not* in the United States for six months he was entitled to the exemption even though he could not *affirmatively* prove *residence* in a *foreign country* for that period or longer. By contrast the present statute requires the taxpayer to affirmatively prove his bona fide residence in a foreign country or countries during the whole of the year. As was said by Judge Sibley for the 5th Circuit in Swenson v. Thomas, 164 F.2d 783,—"under the former law only simple absence from the United States anywhere or for any purpose need be shown, and for only six months and a day, to exempt the year's earned income, and by liberal construction there had been an undesirable escape from just taxation; and the change was made not because of a reversal of the original purpose to encourage foreign employment of Americans, but to so tighten the law as to require bona fide residence in a particular foreign country, or countries, and for the whole of the taxable year." As the original wording of the statute was so liberal to the taxpayer that it opened the door to abuse and evasion of tax obligations not consistent with the legislative purposes to encourage foreign trade, it is not surprising that the leading cases applying it to disputed facts applied the strict construction generally applicable as a rule of interpretation of tax exemptions, and held that to be entitled to the exemption the taxpayer must show *actual physical absence* from the geographical territory of the United States for the six month period. It was so held in this 4th Circuit in Commissioner v. Swent, 155 F.2d 513, in the opinion by Judge Dobie. A prior decision to the same effect was Commissioner v. Fiske's Estate, 7 Cir., 128 F.2d 487. See also Muhleman v. Hoey, Commissioner, 2 Cir., 124 F.2d 414; Downs v. Commissioner, 9 Cir., 166 F.2d 504, 509.

In the Swent case Judge Dobie's opinion points out that the word "resident" varies in meaning dependent upon the context in which it is used and the purpose of the statute in which it is found. It is sometimes used interchangeably with "domicile" but it is quite clear that as here used it is not equivalent to "domicile". Foreign service officers of American corporations with extensive foreign interests as a general rule do not surrender their American domicile or their particular State citizenship when, as did the taxpayer in this case, they accept foreign service abroad for an indefinite period. In the instant case the taxpayer clearly retained his domicile in Baltimore where he was born and his family had lived for several generations and where he ultimately expected to return to live and is in fact now living. But this is not inconsistent with his having obtained a bona fide residence in a foreign country for the tax years in question. As Judge Dobie said in the Swent case, quoting from the Matter of Newcomb's Estate, 192 N.Y. 238, 84 N.E. 950, 954: "'Residence' means living in a particular locality, but 'domicile' means living in that locality with intent to make it a fixed and permanent home. 'Residence' simply requires bodily presence as an inhabitant in a given place, while 'domicile' requires bodily presence in that place and also an intention to make it one's domicile." [155 F.2d 515.]

When we come to cases dealing with the statute in its present form, I find the most pursuasive principles for its application in Judge Sibley's opinion in Swenson v. Thomas, 5 Cir., 164 F.2d 783, where the exemption was allowed to a taxpayer whose profession was that of a geophysicist who had spent four years in various countries of South America, having no fixed home anywhere, but paying some foreign taxes during the years involved. And on different but still comparable facts, the exemption was likewise allowed by Chief Judge Hincks in the District of Connecticut in Yaross v. Kraemer, Collector, D.C., 83 F.Supp. 411.

Counsel for the defendant places his chief reliance on Downs v. Commissioner,

466

9 Cir., 166 F.2d 504, where the exemption was not allowed. But an examination of this latter case will show that Judge Stephens' opinion is not substantially different in principle from that of Judge Sibley in the Swenson case. The difference in result was due to the facts which were materially different from those of the instant case with respect to the nature of and reasons for the taxpayer's residence abroad. In the Downs case the taxpayers were employed by the Lockheed Aircraft Corporation for foreign service in the equipment and operation of aircraft depots in Northern Ireland and Britain for the prosecution of the recent war. They were admitted to the foreign countries for specific work directly related to the United States Government's war efforts and they were handled, controlled and restricted much the same as military personnel. It is obvious that their situation was vastly different from that of the taxpayer in this case whose employment for service abroad was of indefinite duration while that of the taxpayers in the Downs case was strictly limited. As the opinion shows, the taxpayers in that case were not entitled to the exemption because, as explained by Senator George, Chairman of the Senate Committee on Finance, in the Congressional hearings on the proposed amendment of 1942, the purpose of the amendment was so that "a non-resident American citizen who establishes a home, maintains his establishment and is taking on corresponding obligations of a home in a foreign country, may enjoy the exemption and * * * so that technicians, American citizens who are merely temporarily away from home could be properly reached * * * for taxation purposes." The taxpayers in the Downs case were in the last mentioned category.

Counsel may in due course present the appropriate order for judgment in favor of the plaintiff for the whole deficiency paid by him with interest.