ESTATE OF THEODORE ROODNER, DECEASED, RONALD WAGNER, ADMINISTRATOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4621-74.     Filed July 30, 1975.

*David P. Taylor,* for the petitioner.
*David E. Mills* and *Thomas L. Kummer,* for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency of $1,940.77 in the Federal income tax reported on the final return of the deceased taxpayer, Theodore Roodner, for the period January 1, 1971, through June 25, 1971, the date of his death. The only issue for decision is whether that period is "an entire taxable year" as that phrase is used in section 911(a)(1).[1]

All of the facts are stipulated.

At the time the petition was filed, the legal residence of Ronald Wagner, administrator of the Estate of Theodore Roodner, deceased, was Oakland, Calif. The administrator of the estate filed the final Federal income tax return of the decedent for the taxable year January 1, 1971, through June 25, 1971, with the Internal Revenue Service Center, Ogden, Utah.

Theodore Roodner (hereinafter referred to as decedent) was employed as an attorney by the Kaiser Aluminum Technical Services, Inc. (Kaiser), prior to his death on June 25, 1971. Decedent was assigned by Kaiser to Buenos Aires, Argentina, as legal representative of its local office. He left the United States on or about November 1, 1970, and remained in Argentina for an uninterrupted period beginning prior to January 1, 1971, and

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

ending June 25, 1971. During the period January 1, 1971, through June 25, 1971, he was a bona fide resident of Argentina. Decedent earned and was paid $22,999.03, by Kaiser for the performance of services in Argentina during that period.

Decedent was at all pertinent times a citizen of the United States. His marital domicile was the State of California and, under the laws of that State, one-half of all of his income is deemed to belong to his spouse. Since the income earned by decedent in Argentina was considered community income under California law, the administrator of his estate reported only one-half thereof on decedent's final income tax return for the period ending June 25, 1971, the other one-half being reported by decedent's surviving spouse. In preparing decedent's return, the administrator excluded from gross income the amount of $9,643.82, claiming that section 911(a)(1) applied to the income earned in Argentina. Respondent determined a deficiency by including the $9,643.82 in petitioner's gross income.

Section 911(a)(1) [2] provides that gross income does not include income earned by an individual citizen of the United States if he "has been a bona fide resident of a foreign country * * * for an uninterrupted period which includes an entire taxable year" and if certain other conditions not in dispute are satisfied. Decedent's income tax return for the period January 1, 1971, to the date of his death on June 25, 1971, was filed for a short taxable year pursuant to section 443(a)(2). [3] Citing sections 441(b)(3) [4] and

[2] SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.—In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. * * *

[3] SEC. 443. RETURNS FOR A PERIOD OF LESS THAN 12 MONTHS.

(a) RETURNS FOR SHORT PERIOD.—A return for a period of less than 12 months (referred to in this section as "short period") shall be made under any of the following circumstances:
* * *

(2) TAXPAYER NOT IN EXISTENCE FOR ENTIRE TAXABLE YEAR.—When the taxpayer is in existence during only part of what would otherwise be his taxable year.

[4] SEC. 441. PERIOD FOR COMPUTATION OF TAXABLE INCOME.

(b) TAXABLE YEAR.—For purposes of this subtitle, the term "taxable year" means—
* * *

(3) the period for which the return is made, if a return is made for a period of less than

7701(a)(23),[5] petitioner argues that January 1, 1971, through June 25, 1971, was decedent's "entire taxable year," thus satisfying the requirement of section 911(a)(1).

Respondent contends that, despite the clear language of the Code sections cited by petitioner, Congress intended the phrase "entire taxable year," as that phrase is used in section 911(a)(1), to mean a minimum 12-month period which includes a full taxable year.[6] We disagree and we hold for petitioner.

The literal language of section 911(a)(1) cogently supports petitioner's position. The phrase "taxable year" is a term of art defined in sections 441(b)(3) and 7701(a)(23), quoted in footnotes 4 and 5, *supra,* to mean the period for which the return was made. The language in those definitions is clear and unambiguous. It means what it says. The return here in dispute was properly made for the period January 1, 1971, through June 25, 1971, the date of decedent's death, and that was decedent's "entire taxable year."

When Congress intended to set minimum time requirements for the exclusion of income earned abroad, it did so with precision in section 911(a)(2).[7] If Congress had intended the result espoused by respondent, section 911(a)(1) could easily have been

---

12 months.

[5] SEC. 7701. DEFINITIONS.

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

* * *

(23) TAXABLE YEAR.—The term "taxable year" means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the taxable income is computed under subtitle A. "Taxable year" means, in the case of a return made for a fractional part of a year under the provisions of subtitle A or under regulations prescribed by the Secretary or his delegate, the period for which such return is made.

[6] In support of his position, respondent cites *Witt v. United States,* an unreported case (N.D. Ga. 1956, 52 AFTR 1838, 56-2 USTC par. 10,002). We respectfully disagree with that opinion.

[7] SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

* * *

(2) PRESENCE IN FOREIGN COUNTRY FOR 17 MONTHS.—In the case of an individual citizen of the United States who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such 18-month period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c).

written as "a minimum uninterrupted period of 12 months which included an entire taxable year." Congress did not do so but, instead, used a technical term which is precisely defined in sections 441(b)(3) and 7701(a)(23). There is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Assns.*, 310 U.S. 534, 543 (1940). We cannot depart from the statutory language to effectuate what respondent may surmise was the congressional purpose. *Curtis T. Busse*, 58 T.C. 389, 392 (1972), affd. 479 F.2d 1147 (7th Cir. 1973).

The legislative history of section 911(a), relied upon by respondent, in any event, will not support a different result. The predecessor of section 911(a) was section 116(a) of the Internal Revenue Code of 1939. It originally read, in pertinent part, as follows:

In the case of an individual citizen of the United States, a bona fide non-resident of the United States for more than six months during the taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25(a) if received from sources within the United States * * *

Section 148, Revenue Act of 1942, ch. 619, 56 Stat. 841-842, amended the section so as to read:

(1) FOREIGN RESIDENT FOR ENTIRE TAXABLE YEAR.—In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25(a) if received from sources within the United States * * *

The reason for the change was to prevent abuses by taxpayers who merely absented themselves from the United States for 6 months for tax-evasion purposes. The law was rewritten to require bona fide residence in a foreign country as opposed to nonresidence in the United States. *Commissioner v. Matthew*, 335 F.2d 231, 234 (5th Cir. 1964); *Downs v. Commissioner*, 166 F.2d 504, 507 (9th Cir. 1948); *Swenson v. Thomas*, 164 F.2d 783, 784 (5th Cir. 1947); *White v. Hofferbert*, 88 F. Supp. 457, 462-463 (D. Md. 1950); [8] S. Rept. No. 1631, 77th Cong., 2d Sess.,

---

[8] The court in *White v. Hofferbert*, 88 F. Supp. 457, 463 (D. Md. 1950), stated:

1942-2 C.B. 548-549.[9] Thus, the change was not designed as a mere extension of the length-of-time requirement, but represented a change in the very nature of what was prescribed for the exemption—from the status of a nonresident (i.e., physically absent from) of the United States to a bona fide resident of a foreign country or countries. At no point in the legislative history is reference made to a time requirement without reference to the "taxable year."

The cases relied upon by respondent further undermine his position. In *Donald H. Nelson*, 30 T.C. 1151 (1958), the taxpayers were abroad for a period beginning November 21, 1951. They established residence in Ethiopia on March 2, 1952, and returned to the United States on March 13, 1953. Despite the fact that their stay abroad exceeded 12 months, we applied the language of section 911(a)(1), holding that, since the taxpayers were not bona fide residents of Ethiopia for *an entire taxable year,* they did not qualify for the exemption.

This Court also followed the language of section 911(a)(1) in *Donald F. Dawson*, 59 T.C. 264 (1972), and made specific reference to the definition of "taxable year" provided by section 7701(a)(23). In that case, the taxpayer arrived in Australia on

---

"As a result of the change in wording, the reasonable inference for statutory construction is that the proper emphasis as to the test has shifted from a mere matter of time of absence from the United States to a determination of *bona fides of foreign residence* for the whole year."

The "whole year" refers to an earlier provision relating to the "entire taxable year."

[9] S. Rept. No. 1631, 77th Cong., 2d Sess., 1942-2 C.B. 548-549, stated:

Under section 116(a) of the Internal Revenue Code a citizen of the United States residing outside the United States more than six months during the taxable year is exempt from tax on his earned income from sources outside of the United States, except in the case of income paid by the United States or any of its agencies. This provision of the present law has suffered considerable abuse in the case of persons absenting themselves from the United States for more than six months simply for tax evasion purposes. To stop this abuse, the House bill repealed section 116(a).

From cases brought to your committee's attention, the complete elimination of this section would work a hardship in the case of citizens of the United States who are bona fide residents of foreign countries. For example, many employees of American business in South America do not return to the United States for periods of years. Such persons are fully subject to the income tax of the foreign country of their residence. Your committee has adopted a provision which it is believed will effectively terminate the abuse of this section but at the same time will not unduly penalize our citizens who are bona fide residents of foreign countries. It provides that if such citizens establish that they are bona fide residents of a foreign country during the entire taxable year their earned income from sources without the United States will be exempt. If they have been residents of a foreign country for two years or more, this same treatment will be accorded them for the year in which they return to the United States.

January 3, 1966, and left in early 1967. We held he was a bona fide resident. However, we denied the exclusion under section 911 because, as a calendar year taxpayer, he was not a bona fide resident of Australia for an "entire taxable year." We stated (59 T.C. at 271-272):

A further, and perhaps decisive impediment to petitioner's position is section 7701(a)(23) of the 1954 Code which defines "taxable year" to mean "calendar year, or the fiscal year ending during such calendar year, upon the basis of which the taxable income is computed under subtitle A." * * * And when Congress speaks in section 911(a)(1) of the "*entire* taxable year," it would seem that we have no latitude within which we can give these words a more hospitable construction.

The difficulties presented by the statute are too great for an interpretation in petitioner's favor, notwithstanding his appealing equities * * * and, finally, the definition of "taxable year" in section 7701(a)(23) appears to rule out the interpretation of "entire taxable year" for which petitioner contends. * * *

Here, the shoe is on the other foot, and the clear language of section 911(a)(1) must also preclude a construction more hospitable to respondent's purposes.

Finally, respondent argues that failure to uphold his determination will open wide the door to potential abuse. We think it incredible that other taxpayers will consider the fact pattern of the instant case a desirable model for tax planning. The limited exceptions in section 443(a), which require a shortened taxable year, are either out of the taxpayer's control or subject to the approval and actions of respondent. See sec. 1.442-1(b), Income Tax Regs.[10]

---

[10] Sec. 911(c)(1)(A) provides generally that the amount excluded from the gross income of an individual for "any taxable year shall not exceed an amount which shall be computed on a daily basis at an annual rate" of $20,000, but the section does not state what is meant by "annual rate" where the taxable year is a short one. The exclusion of $9,643.82 claimed by petitioner represents 176/365 of decedent's earnings during the 176 days of his life in 1971. In his reply brief, respondent argues, alternatively, for the first time that, since decedent's earnings were community income, the exclusion must be limited to decedent's community one-half of the $9,643.82. Neither the notice of deficiency nor the pleadings nor respondent's opening brief raises this issue. Since it is not properly before us, we do not decide it.

We note that sec. 1.911-2(a)(4)(ii), Income Tax Regs., appears to clarify the ambiguity of the term "annual rate" in sec. 911(c)(1) where the taxable year is a short one by providing:

(ii) *Rules of application—(a) Number of days.* The amount excludable under this paragraph accrues on a daily basis throughout the taxable year. The number of days to be used in making the computation * * * on a daily basis shall be *the number of days in the taxable year with respect to which the exclusion is claimed.* [Emphasis added.]

Under this regulation, petitioner may be entitled to exclude the full community one-half of decedent's earnings during the Jan. 1 through June 25, 1971, taxable year. However, since that issue has not been presented, we do not decide it.

To reflect other adjustments settled by the parties,

*Decision will be entered under Rule 155.*