## CIRCUIT COURT OF FAIRFAX COUNTY

Hartford Fire Ins. Co.

v.

First Union National Bank et al.

April 1, 1998

Case No. (Law) 161145

BY JUDGE KATHLEEN H. MACKAY

This matter is before the Court on Defendants' First Union and First Virginia's Demurrer and Summary Judgment motions. The underlying claim involves Plaintiff Hartford Fire Insurance Company's action against Defendants to recover for checks forged by a Culmore Realty Company employee and her boyfriend and deposited at Defendants' banks. Plaintiff is a surety to Culmore Realty Company. Plaintiff is suing First Union for (1) Breach of Restriction and (2) Conversion, and both First Union and First Virginia for (3) Negligence and (4) Money Had and Received.

### I. *Forged Checks at Issue*

The following checks deposited or paid by First Union are at issue:

1. One $315.00 check payable to Culmore Realty Co. Spec. Trustee # 2 deposited in the Goodman account from September 29, 1994. The check contained a forged drawer's signature, forged payee endorsement, and had the restrictive endorsement "for deposit only" crossed out.

2. Five checks totaling $1,533.50 payable to Culmore Realty Co. Spec. Trustee # 2 paid or deposited in the Goodman account from October 11, 1994, to December 14, 1994. The checks contained forged drawer's signatures, forged payee endorsements, and restrictive endorsements "for deposit only" crossed out.

3. Eleven corporate and individual payee checks totaling $17,923.67 payable to parties other than Goodman, paid or deposited in the Goodman account from October 17, 1994, to April 14, 1995. The checks contained forged drawer's signatures, forged payee endorsements, restrictive endorsements "for deposit only" crossed out, and the endorsement of Goodman or his account number following the forged payee endorsement. One of these was a corporate payee check for $2,750.00 with a forged drawer's signature, contained a "for deposit only" restrictive endorsement, missing payee endorsement, and bore the account number of Harris' personal account at First Union.

4. One $315.00 check payable to Culmore Realty Co. Spec. Trustee # 2, deposited or paid on November 21, 1994, with a forged drawer signature, no endorsement of the named payee, endorsed by Goodman, and bore an account number not belonging to the payee.

5. Nineteen checks payable to various corporate and individual payees worth $17,781.78, paid or deposited from November 21, 1994, to May 16, 1995, with forged drawer's signatures, forged payee endorsements, and endorsed by Goodman or with an account number different from the payees' account number.

The following checks deposited or paid by First Virginia are at issue:

1. One check worth $2,350.00 payable to GB Contractors, paid or deposited on May 12, 1995, containing a forged drawer's signature, forged payee endorsement, and followed by Goodman's endorsement.

2. Nine checks totaling $6,580.42 payable to various corporate and individual payees paid or accepted for deposit from May 13, 1995, to July 17, 1995, containing forged drawer's signatures, forged payee endorsements, and followed by Goodman's endorsement or account number.

## II. *Analysis*

### A. *Money Had and Received against First Virginia and First Union*

Plaintiff's Motion for Judgment states Defendants First Virginia and First Union are liable for money had and received for the proceeds from the checks

that were deposited in the Defendant banks in violation of restrictive, forged, unauthorized, or missing endorsements.

First Virginia argues that the Plaintiff's claim for money had and received must fail because (1) Plaintiff never alleged First Virginia retained the proceeds of the forged checks; (2) First Virginia only held the depositor's money, not Culmore Realty's; (3) money had and received is actually a conversion claim preempted and governed by Va. Code § 8.3A-420; (4) First Virginia claims it cannot be liable under this Count for checks that were paid to the forger and not deposited; and (5) First Virginia alleges it held the drawee's bank's funds, not the depository bank's, so a money had and received claim cannot stand.

First Union states that (1) since each of Culmore's checks were not authorized by Culmore, First Union never received Plaintiff's property, so it cannot be liable for money had and received; and (2) the Virginia U.C.C. displaced the claim of money had and received by Va. Code §8.3A-420(a).

In Plaintiff's briefs in response to Defendants' arguments, Plaintiff claims Defendants admit to depositing or paying on checks in violation of restrictive endorsements or despite missing, forged, and unauthorized endorsements. Further, the banks deposited checks payable to corporate payees into personal accounts. Since the claim of money had and received lies whenever one has money of another which he has no right to retain (citing *Shores v. Shaffer*, 206 Va. 775 (1966)), Plaintiff states the Demurrer should be overruled. Further, Plaintiff argues the action is not conversion, nor is it displaced by the Code.

An action of Money Had and Received will lie whenever one has money of another which he has no right to retain and which defendant is obligated by natural justice and equity to refund. *Shores v. Shaffer*, 206 Va. 775 (1966). Plaintiff and Defendant both cite *State of Qatar v. First Am. Bank of Va.*, 88 F. Supp. 463 (E.D. Va. 1995), in support of their arguments regarding the claim of money had and received. In *Qatar*, the Court stated money had and received is very similar to conversion and treated the two claims as one. *Id.* at 466. Following the logic of *Qatar*, I will treat the count of money had and received as indistinguishable from Va. Code § 8.3A-420 for the purposes of this case.

## B. *Conversion and Breach of Restriction*

The law applicable to conversion of personal property also applies to checks, where the party to whom the check is payable is the owner. Va. Code § 8.3A-420(a). In general, when a depository bank accepts a forged

instrument and the drawee bank pays the depository bank on the check, the drawer has no action in conversion against the depository bank. Va. Code § 8.3A-420(a); *State of Qatar v. First Am. Bank of Va.*, 88 F. Supp. 463, 467 (E.D. Va. 1995). This is because (1) the check represents an obligation of the drawer rather than property of the drawer, and (2) the drawer has an adequate remedy against the drawee bank for unauthorized payment of the check. Va. Code § 8.3A-420(a), comment 1. Further, the Court in *Qatar* and *Underpinning & Foundation Constructors, Inc. v. Chase Manhattan Bank*, 46 N.Y.2d 459, 386 N.E.2d 1319 (1979), state the reason the drawer does not have a cause of action against the depository bank in this scenario is because the drawee, by transferring funds on a check without an effective endorsement, is transferring the drawee bank's own funds, not funds from the drawer's account. See Va. Code § 8.4-401, comment 1 (drawee is not authorized to pay on a drawer's check that contains either a forged payee endorsement or a forged drawer's signature).

However, when the drawee bank is authorized to pay on the check, then the drawee is in fact paying funds in which the drawer has an interest, and the funds may serve as the basis for a conversion action against a depository bank which wrongfully obtained that money. *Underpinning*, 46 N.Y.2d at 466, 386 N.E.2d at 1322. Therefore, the drawer can sue for conversion only in those rare situations where the drawee has acted properly, but the depository bank has acted improperly. *Id.* The issue is whether this circumstance exists in this case, where both the payee endorsements and the drawer's signatures are forged.

The checks at issue in this dispute involve both forged drawer's signatures and forged payee endorsements. Therefore, Plaintiff's reliance on cases such as *State of Qatar v. First Am. Bank of Va.*, 88 F. Supp. 463 (E.D. Va. 1995); *Underpinning & Foundation Constructors, Inc. v. Chase Manhattan Bank*, 46 N.Y.2d 459, 386 N.E.2d 1319 (1979); and *Hartford Fire Ins. Co. v. Maryland National Bank*, 341 Md. 408 (1996), is misplaced because they merely involve forged endorsements. Instead, this is a "dual forgery" case. Under the pre-1990 Code, the Fifth Circuit in *Perini Corp. v. First Natl. Bank*, 553 F.2d 398 (5th Cir. 1977), rehg. denied, 557 F.2d 823 (5th Cir. 1977), as well as the majority of jurisdictions treated dual forgery cases as if they involved forged drawer signatures alone. White & Summers, *Uniform Commercial Code*, § 19-4 at 258 (4th ed. 1995); *Perini* at 412. The revised Code does nothing to change this result. The Supreme Court, in *United States v. Chase National Bank*, 252 U.S. 485 (1920), explained the reason for limiting liability in dual forgery cases was because the forged endorsement puts the drawee "in no worse position than he would occupy if that were genuine. He cannot be called upon to pay again, and the collecting bank has not received the proceeds of an instrument to which another held a better

title." The drawer's loss results not from making payment to the wrong person because of a forged endorsement but from the drawee making any payment at all on the basis of a forged drawer's signature. *Perini* at 415, citing *Aetna Life & Cas. Co. v. Hampton State Bank*, 497 S.W.2d 80 (1973). For these reasons, I hold that the checks at issue containing dual forgeries are to be treated as checks with forged drawer's signatures only.

The issue then becomes whether the depository banks are liable to Plaintiff for the forged signatures. In forged check cases, liability generally begins and ends with the drawee bank. Liability begins with the drawee bank because the forgery does not operate as the drawer's signature, thus the drawee bank violates its duty to only charge its customer's account for properly payable items. *Perini* at 404. Liability also ends with the drawee bank because of the final payment rule: the drawee's payment of a forged check is final in favor of a holder in due course or one who has relied on payment in good faith. *Id.* citing U.C.C. § 3-418(c) (drawee bank cannot recover for payment of a forged check against "a person who took the instrument in good faith and for value or who in good faith changed position in reliance on the payment or acceptance"). As a result, for the reasons discussed *supra*, nothing in the Code permits a drawer to sue a depository bank on the basis of the forged drawer's signature. *See, e.g., Perini* at 416.

Further, I find the U.C.C. does not support a claim for breach of restriction in this case, and to find liability for a common law claim for breach of restriction would be inconsistent with the provisions of the Code. Va. Code § 8.1-103. The "affirmative obligation" depository banks have to handle checks consistent with restrictive endorsements (see *Qatar* at 468-69; and *Underpinning* at 1323) is not applicable in dual forgery situations for the same reasons discussed above. Therefore, Plaintiff's claims for money had and received, conversion, and breach of restriction must fail. Defendants' motions for Summary Judgment are granted on these Counts.

C. *Negligence, Gross Negligence, and Recklessness (Virginia Code § 8.3A-406) against First Union and First Virginia*

1. *Plaintiff's Motion for Judgment*

Plaintiff's Motion for Judgment states Defendants First Virginia and First Union had a duty to exercise ordinary care in handling the forged checks. Both banks allegedly breached this duty by negligently permitting the checks to be cashed or deposited into the forger's personal accounts with forged, unauthorized, and/or missing endorsements and by disregarding restrictive endorsements. Further, Plaintiff claims First Virginia and First Union "recklessly, wantonly, in willful disregard and conscious indifference for the

rights of others, and with gross negligence amounting to bad faith," permitted the forger to deposit checks (many payable to corporate payees, bearing "for deposit only" restrictions and missing payee endorsements) into personal accounts which did not match the name of the payee. By doing this, Plaintiff alleges the banks violated obligations of a depository bank, resulting in injury to the Plaintiff.

### 2. *First Virginia's Arguments*

First Virginia's Demurrer argues that (1) Va. Code § 8.3A-406 is only a defensive statute, thus it is unavailable to the Plaintiff for an aggressive claim; (2) Va. Code § 8.3A-406 is inapplicable on its face because Plaintiff's motion for judgment alleges all checks were altered or forged before they were deposited, so it was impossible for First Virginia to have performed any act that "substantially contributed" to any alteration or forgery of the checks; (3) since the forged checks deposited at First Virginia bore no restrictive endorsements, were endorsed in the name of the payee, and bore all necessary endorsements, First Virginia did not handle the checks improperly; and (4) Plaintiff cannot use common law causes of action because they have been preempted by the U.C.C. for claims involving checks.

In First Virginia's Brief in Support of its Demurrer/Summary Judgment, First Virginia alleges all of Plaintiff's claims fail because First Virginia never possessed Culmore Realty's property, instead, First Virginia possessed the drawee bank's funds because the checks were never authorized. In First Virginia's Reply Brief in Support of its Demurrer/Summary Judgment, First Virginia also claims Plaintiff's interpretation of Va. Code § 8.3A-406 is at odds with the "clear scheme outlines in §§ 8.4-401, 8.3A-404, and 8.3A-420." First Virginia argues the purpose of the comparative negligence standard in Va. Code § 8.3A-406 is to mitigate the harsh effects of the preclusory rules under the old U.C.C. In short, § 8.3A-406(a) is an affirmative defense, and subsection (b) merely mitigates its effects and does not create a new cause of action (citing *Hermetic Refrigeration Co., Inc. v. Central Valley Natl. Bank*, 493 F.2d 476, 477 (9th Cir. 1974)).

### 3. *First Union's Arguments*

First Union's Demurrer and Motion for Summary Judgment states that since the checks were never authorized, First Union never received Culmore's property, thus Plaintiff has no claims against First Union, including

negligence. Further, First Union claims that Plaintiff, as the drawer of the checks, has no claim against a depository bank for forged signatures under the U.C.C. In First Union's Brief in Support of its Demurrer to Count A and Motion for Summary Judgment, First Union argues that Plaintiff has no basis for an affirmative claim under Va. Code § 8.3A-406. Instead, First Union claims the statute only works to preclude other actions.

In First Union's Reply Brief in Support of its Demurrer to Count A and Motion for Summary Judgment, First Union claims (1) if an affirmative claim does exist under Va. Code § 8.3A-406, it exists only for the payee (citing White & Summers, *Uniform Commercial Code* § 19-1 at 241 (4th ed. 1995)) and (2) Plaintiff's common law claim of negligence is displaced by the U.C.C. See Va. Code § 8.1-103; *Equitable Life Assurance Society of U.S. v. Okey*, 812 F.2d 906, 909-9 (4th Cir. 1987) ("the coverage of U.C.C. § 3-419 [the predecessor to § 3-420] and its allocation of the burden of proof of the element of due care in a way that differs from that in common law negligence demonstrate an intended displacement of the negligence cause of action."); *Brar v. Signet Bank*, 35 Va. Cir. 52, 54 (Fairfax County 1994) ("the U.C.C. has displaced the common law cause of action for negligence"); *Jefferson Natl. Bank v. First Va. Bank*, 29 Va. Cir. 296, 296 (Fairfax County 1992) (U.C.C. replaced common law negligence action).

### 4. *Plaintiff's Response*

In Plaintiff's Opposition to Demurrer of Defendant First Virginia Bank, Plaintiff argues that: (1) contrary to First Virginia's assertions, Va. Code § 8.3A-406(b) does provide an affirmative cause of action (citing White & Summers, *Uniform Commercial Code*, § 19-1 at 247 (4th ed. 1995)) and permits the allocation of losses between the employer and the depository bank. Plaintiff claims that under the statute, depository banks may be held liable for payment of checks over forged endorsements (citing Va. Code § 8.3A-406, comment 4). Therefore, Plaintiff argues it is a question of fact as to whether First Virginia substantially contributed to the loss; (2) First Virginia does not consider subsection (b) when arguing that Va. Code § 8.3A-406 is inapplicable on its face. Plaintiff claims First Virginia was negligent in "paying or taking" the checks under subsection (b), thus the statute is applicable; (3) First Virginia is wrong in arguing the negligence claim is a preempted common law cause of action. Plaintiff states Count III is for statutory negligence under the U.C.C.; (4) First Virginia's argument that it did

nothing wrong in handling the checks ignores the facts and law and is irrelevant to a demurrer.

In Plaintiff's Opposition to Demurrer and Motion for Partial Summary Judgment of Defendant First Union Bank and Motion for Summary Judgment of Defendant First Virginia Bank, Plaintiff argues Va. Code § 8.3A-406 provides an affirmative action by a drawer against a depository for its negligence. This is true regardless of the existence of forged drawer's signatures (citing White & Summers, *Uniform Commercial Code*, § 19-4 at 283-287 (4th ed. 1995) (discussing what the outcome of *Garnac Grain Co. v. Boatmen's Bank & Trust Co.*, 694 F. Supp. 1389 (W.D. Mo. 1988), would be under the revised code). Plaintiff also cites *Atlantic Mut. Ins. v. Provident Bank*, 669 N.E.2d 901 (Ohio Mun. 1996), for support of the claim that under Va. Code § 8.3A-406, a bank which accepted the forged checks can be liable to the employer/drawer. Plaintiff argues that since it alleged Defendants failed to exercise ordinary care regarding the forged endorsements on the checks, Plaintiff has sufficiently stated a claim, and there are material facts in dispute. Therefore, Plaintiff argues the Summary Judgment and Demurrer motions should be denied.

### 5. *Law and Analysis*

First, consistent with Plaintiff's Motion for Judgment and Plaintiff's Opposition to Demurrer of Defendant First Virginia Bank, this Count will be treated as a statutory claim under Va. Code § 8.3A-406, and not as a common law claim. The statute in question, Va. Code § 8.3A-406, states, in relevant part:

(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) Under subsection (a), if the person asserting the preclusion that fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

Subsection (a) adopts the doctrine of a case which held that a drawer who so negligently draws an instrument as to facilitate its material alteration is liable to a drawee who pays the altered instrument in good faith. Va. Code § 8.3A-406, comment 1. The Code expanded the doctrine to include any person who, in good faith, pays the instrument or takes it for value or for collection. *Id.* Subsection (b) explicitly adopts a comparative negligence standard to replace the old Code's contributory negligence standard. The contributory negligence standard made the precluded person's negligence irrelevant if the person asserting the preclusion was found to be contributorily negligent. However, under the revised code, even if, for example, a payee was negligent under Va. Code § 8.3A-406(a) in a forged endorsement claim, the depository bank may be comparatively negligent under subsection (b) for the share of the loss if a finder of fact determined the bank should have been alerted to possible fraud or failed to exercise due care. Va. Code § 8.3A-406, comment 4.

Plaintiff relies on the assertion that Va. Code § 8.3A-406(b) can be used as an affirmative action, not just in response to a preclusion under Va. Code § 8.3A-406(a). According to White & Summers, *Uniform Commercial Code*, § 19-1 at 239, 247 (4th ed. 1995), a result of the 1990 amendment from a contributory negligence to a comparative negligence standard is that negligence is no longer merely a basis for preclusion under the section, but it is now a basis for an affirmative claim. "Although it does not say so in terms, the 'loss allocated' language in 3-406(b) must be interpreted to grant an affirmative cause of action to the [Plaintiff] as a means of recovering for what part of the loss which the bank should bear." The authors state under the revised Code, a bank's negligence gives other parties a cause of action to recover an appropriate share under 3-406(b). The authors use an example of a negligent depositor suing a bank under 3-406(b) for the part of the loss which the bank should bear. The authors use another example of a bank who paid checks over the forged endorsement of the embezzling employee, where the employer/depositor acknowledges that it substantially contributed to the forgeries, yet asserts that some part of the loss should be borne by the bank under 3-406(b). Although the employer admitted that it is precluded under 3-406(a), the authors state the employer has a cause of action against the other negligent party under 3-406(b).

The question of whether Va. Code § 8.3A-406 provides an affirmative cause of action is an issue of first impression in Virginia, so there are no cases to offer guidance as to the statute's application in the case at bar. Further, there are no cases from surrounding jurisdictions that are directly on point.

White & Summers' discussion regarding 3-406(b) as an affirmative action is also hypothetical and does not have any case law to support its prediction of the effect of the revised subsection (b). It is the Court's role to construct what the legislature intended when it adopted the statute. When statutory language is clear and unambiguous, there is no need for construction by the court; the plain meaning and intent of the enactment will be given it. *Brown v. Lukhard*, 229 Va. 316, 321 (1985). Unless a literal interpretation of statutory language will amount to a manifest absurdity, courts should not adopt a construction that, in effect, holds the legislature did not mean what it actually has expressed. *Dairyland Ins. Co. v. Sylva*, 242 Va. 191 (1991). Virginia Code § 8.3A-406(b) explicitly states *"Under subsection (a), if the person asserting the preclusion* that fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss ..." the loss is allocated between the parties. (Emphasis added). I find the plain meaning of subsection (b) to mean that if a party never asserts a preclusion under subsection (a), one never gets to subsection (b). In simple terms, the statute says "If X, then Y." Logically, if X never occurs, then Y is not prescribed by the statute. In the case at bar, Defendants never invoke Plaintiff's negligence as a preclusion to Plaintiff's claims. Since subsection (a) does not apply in this case, there is no "person asserting the preclusion," thus subsection (b) does not apply. This fact is what distinguishes the case at bar from *Atlantic Mut. Ins. v. Provident Bank*, 669 N.E.2d 901 (Ohio Mun. 1996). In *Atlantic Mutual*, the Court applied Ohio's version of § 3-406 to a case where an employee (not one with "responsibility") forged the signature of his employer on two checks made payable to a fictitious individual, and then endorsed the checks. The defendant bank cashed the checks, and the employer sued the bank, stating the bank never asked for identification, nor did it notice that these payroll checks were manual instead of computerized. When the drawer sued the depository bank, the bank alleged Plaintiff was precluded from suing Defendant due to Plaintiff's own negligence. Therefore, Plaintiff was able to allocate the loss between the parties under subsection (b). In *Atlantic Mutual*, the Defendant asserted U.C.C. § 3-406(a) to preclude Plaintiff's claim. In the case at bar, Defendants make no such claim.

This conclusion is in accordance with the official comment section of Va. Code § 8.3A-406 for subsection (b). The official comment 4 states: "If the person precluded under subsection (a) proves that the person asserting the preclusion failed to exercise ordinary care ... the loss may be allocated between the two parties on a comparative negligence basis." Nowhere does it state that no preclusion is needed to attempt to allocate the loss between the

parties. Further, the hypothetical case cited as an example in the official comment supports this reading of the statute. In summary, according to my reading of the plain meaning of the statute, Va. Code § 8.3A-406(a) never comes into play in the case at bar, and subsequently, the allocation of loss between the parties on a comparative negligence basis under subsection (b) is not available to the Plaintiff. Therefore, Defendants First Union and First Virginia's Demurrer of Count III is sustained without leave to amend.