DAVID P. LANSDOWN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lansdown v. Commissioner
Docket No. 4936-93
United States Tax Court
T.C. Memo 1994-452; 1994 Tax Ct. Memo LEXIS 458; 68 T.C.M. (CCH) 680; September 8, 1994, Filed *458 Decision will be entered for respondent. David P. Lansdown, pro se. For respondent: Brant S. Goldwyn. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a) 6653(a)(1)
6653(a)(2)
6654
1983
$ 15,665
$ 3,977
$   795
50% of the interest
$   973
due on the entire
deficiency
1984
29,616
7,430
1,486
50% of the interest
1,868
due on the entire
deficiency
1988
6,866
-  -  -
-  1989
25,372
-  -  -
-  The issues for decision are whether petitioner is entitled to the foreign earned income exclusion under section 911(a) and whether petitioner is liable for additions to tax under sections 6651(a), 6653(a), and 6654 for 1983 and 1984. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT At the time of the filing of the petition, petitioner resided in Oklahoma City, Oklahoma. *459 Petitioner is a U.S. citizen, and he owned a house in Oklahoma City during the years in issue. Petitioner has two sons, born in 1975 and 1978, respectively. Petitioner separated from his wife in August 1980 and was divorced in February 1981. Petitioner's ex-wife was awarded custody of the two children, and, although he received visitation rights, petitioner had extensive visitation problems in his dealings with his ex-wife. Nigeria -- 1983 and 1984
Petitioner worked in Nigeria for Trans-Africa Petroleum Consult Limited (Trans-Africa) from July 1980 until December 14, 1984. The only written agreement relating to this employment was a letter from Trans-Africa dated September 23, 1980. The letter of employment stated that petitioner was appointed to the post of "technical representative" and that he would be required to train Nigerians in petroleum engineering technology, but it did not address the term of the employment. Petitioner thought that he was being hired by Shell Nigeria, part of the Royal Dutch Shell Group (Shell), and believed that the identity of his employer had been misrepresented to him by the agent who secured his employment. Petitioner threatened to *460 quit his job on two separate occasions. Petitioner obtained Certificates of Pay and Tax from Trans-Africa for the years ended December 31, 1980 through 1983, which stated petitioner's earnings and Nigerian income tax deducted for each year. Petitioner worked about 80 hours per week. He had eye problems and would often take time off to allow his eyes to recover from the strain of work. On these occasions, petitioner usually traveled from Nigeria to the United States, Europe, or Asia. Petitioner also returned to the United States for surgery and to visit his children in Baton Rouge, Louisiana, and his parents in Oklahoma. Petitioner's children did not visit him in Nigeria, because his ex-wife would not permit such a visit. Petitioner's house in Oklahoma was not leased while he was in Nigeria; the house was left in the care of petitioner's neighbor and attorney, Herbert M. Graves (Graves). Petitioner's housing in Nigeria was provided by Shell. Petitioner had investments in the United States during 1983 and 1984, but petitioner did not have any investments in Nigeria because investments in that country by non-Nigerian citizens were prohibited by Nigerian law. Petitioner did not *461 relinquish his Oklahoma voter's registration. Petitioner did not file income tax returns for 1983 and 1984 prior to February 1, 1990. Petitioner attached to his 1983 return a Form 2555, Foreign Earned Income, that stated that he was in Nigeria for 179 days and in the United States for 186 days during 1983. Petitioner attached to his 1984 return a Form 2555 that stated that he was in Nigeria for 223 days and in the United States for 143 days during that year. Petitioner did not have any U.S. income tax withheld from his wages or make any estimated tax payments in 1983 and 1984. Syria -- 1988 and 1989
Petitioner began work in Syria on July 28, 1988, for the Al Furat Petroleum Company (Al Furat). Al Furat was a joint venture formed by Syria Shell Petroleum Development B.V. (Syria Shell) and the Syria Petroleum Company and employed both Syrians and expatriates. Prior to commencing employment in Syria, petitioner executed a power of attorney that permitted Graves to manage and conduct petitioner's affairs in the United States. Petitioner's sister resided in his Oklahoma City house during these years. According to a letter from Syria Shell dated July 28, 1988, petitioner's *462 employment was for a 12-month term from July 28, 1988 through July 27, 1989. By letter dated July 28, 1989, petitioner's employment with Syria Shell was renewed for another 12-month term from July 28, 1989, through July 27, 1990. Pursuant to the terms of each employment letter, Syria Shell had no obligation to offer any subsequent employment, and the employment contract could be terminated by either party on 3-months' notice. The employment letters provided that, for purposes of "remuneration, leave arrangements, etc.", petitioner's base country was the United States and that part of petitioner's salary was intended to cover expenses in the United States, including house maintenance and pension and savings expenses. This portion of petitioner's salary was subject to adjustment to reflect changes in tax rates and the standard of living in the United States. The employment letters also stated that petitioner was not entitled to participate in the company pension plan because his employment was for a limited duration. Petitioner was provided with housing in a high rent district in Syria by his employer. Petitioner shipped some personal household items to Syria, including dishes, *463 pans, flatware, sheets, and books. Petitioner did not have a bank account in Syria. When petitioner began working in Syria, he was provided with a car and a driver by Syria Shell, because it was illegal to bring vehicles into the country and because the Syrian Government did not permit Shell employees to drive by themselves. Subsequently, petitioner was permitted to drive, and he dismissed the driver. Petitioner was also eventually permitted to purchase a motorcycle in Damascus, which he bought with a group of U.S. Embassy employees. Petitioner was hired as an "Economics and Planning Engineer with Technical Department" and was promoted effective July 1, 1989, to "Deputy Manager Planning Department". Petitioner had extensive social contact with his coworkers in Syria, and, because of his position at Al Furat, he had social contact with people in the Syrian Government and with counterparts at the Syrian Petroleum Company. Petitioner was a member of a bridge club that included high-level managers of Al Furat and Syria Shell. Petitioner also played softball with a group that included some Syrians, and he was involved in The Hash, a running club that included a group of expatriates *464 and Syrians. With this organization, petitioner participated in "fun runs" throughout various historical areas in Syria. Petitioner entertained members of The Hash about once a month at his residence. Petitioner also had regular contact with employees of the U.S. Embassy. English was the language spoken at Al Furat. Petitioner was not fluent in Arabic, but he had a "traveler's knowledge" of that language and was able to buy groceries, take his clothes to the laundry, fill his car with gas, and talk to policemen with the assistance of a travel book. Petitioner's Syrian friends spoke better English than he spoke Arabic, and petitioner's other expatriate friends spoke English. Petitioner filed a Form 2555 with his 1988 income tax return that indicated that petitioner was in the United States until his employment in Syria began; in Syria from July 29, 1988, to December 15, 1988; and back in the United States from December 15, 1988, through the end of the year. Petitioner filed a Form 2555 with his 1989 income tax return that indicated that petitioner was in the United States from January 1, 1989, to January 7, 1989, and from December 20, 1989, to December 31, 1989. Petitioner's *465 employer did not withhold any U.S. income tax from petitioner's pay in 1988 or 1989 but did pay Syrian income tax on petitioner's behalf for those years. OPINION Section 911(a) allows a qualified individual to elect to exclude from gross income his foreign earned income, subject to an annual limit, as well as a housing cost amount. Section 911(d)(1) provides: The term "qualified individual" means an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period.
Petitioner has not argued that he was physically present in Nigeria or Syria for 330 full days during a consecutive 12-month period. Thus, in order for petitioner to be considered a qualified individual entitled to the section 911(a) exclusion, he must prove that his tax home was in Nigeria *466 and Syria during the years in issue and that he was a bona fide resident of those countries for an uninterrupted period that includes an entire taxable year. Nigeria -- 1983 and 1984
Petitioner contends that his bona fide residency in Nigeria was accepted by the Internal Revenue Service (IRS) for 1981 and 1982 and, therefore, that, under section 911(e), his bona fide residency in Nigeria for 1983 and 1984 should be continued. He relies on section 911(e), but that section deals only with election and revocation of elections by a taxpayer. It does not create a presumption or evidence against respondent. Petitioner also contends that he was a bona fide resident of Nigeria in 1983 and 1984 under Dawson v. Commissioner, 59 T.C. 264 (1972). However, petitioner must first establish that his tax home was in Nigeria under section 911(d) for each year in issue. Section 911(d)(3) provides that "The term 'tax home' means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home)." However, that section further provides that, regardless of where a taxpayer's home is for *467 purposes of section 162(a)(2), "An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States." Sec. 911(d)(3). In Bujol v. Commissioner, T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988), we stated: "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [Fn. ref. omitted.]
In order to determine where a taxpayer's abode is located for section 911 purposes, it is necessary to examine and compare the taxpayer's ties to the foreign country in question with his domestic ties (i.e., his familial, economic, and personal ties) to the United States. Lemay v. Commissioner, 837 F.2d 681, 683-684 (5th Cir. 1988), *468 affg. T.C. Memo. 1987-256; Harrington v. Commissioner, 93 T.C. 297, 307-308 (1989). Even though a taxpayer may have some ties to a foreign country, if his ties to the United States remain strong, we have held that his abode remained in the United States, especially when the taxpayer's ties to the foreign country were transitory or limited. Harrington v. Commissioner, supra at 308. For example, in Lemay, the taxpayer, who had resided in Louisiana prior to being transferred overseas, worked on an offshore rig in the territorial waters of Tunisia. Because of his supervisory position, the taxpayer was occasionally required to travel to his employer's offices on the Tunisian mainland. The taxpayer had some contact with Tunisian residents, met with Tunisian municipal officials, and occasionally attended informal gatherings and sporting events. However, despite these contacts with Tunisia, the Court of Appeals for the Fifth Circuit upheld our conclusion that, because the taxpayer had retained strong economic, familial, and personal ties to his residence in Louisiana, his abode remained *469 within the United States during the year in issue. The Court of Appeals for the Fifth Circuit stated: While the regulations do provide that the maintenance of a dwelling in the United States does not necessarily mean that an individual's abode is in the United States, Lemay did more than merely maintain his dwelling in Lake Charles, Louisiana. Lemay spent approximately half of his time with his family in Louisiana. He voted in Louisiana, maintained a bank account in Louisiana, and possessed a Louisiana driver's license. The combination of these factors, when contrasted with Lemay's transitory contacts with Tunisia, support the conclusion that Lemay's 'abode' remained in Louisiana * * * [Lemay v. Commissioner, supra at 684.]
Although the exact number of days that petitioner spent in Oklahoma City during 1983 and 1984 is unclear, petitioner maintained his home there, and the record indicates that, during those years, he spent a significant amount of time in the United States for purposes of visiting his family in Oklahoma, resting, and having surgery. Petitioner reported on Form 2555 that, in 1983, he was in the United States for more *470 than half of the year and that, in 1984, he was in the United States for a total of 143 days. Petitioner testified that he did not recall whether he voted in Oklahoma or whether he possessed an Oklahoma driver's license during 1983 or 1984; however, petitioner did not relinquish his Oklahoma voter's registration and maintained investments in the United States during the years in issue. We are satisfied that petitioner retained strong economic, familial, and personal ties to Oklahoma during these years. In contrast, we are not satisfied that petitioner had similar ties to Nigeria. Although petitioner testified that he made several business contacts in Nigeria and that he obtained a Nigerian driver's license and a Nigerian alien registration, the record does not indicate that petitioner had any long-term intention of staying in Nigeria as a resident. Petitioner's employment contract did not contain a term of employment; however, petitioner threatened to quit twice during his employment. Petitioner resided in housing that was provided by his employer, worked 80 hours per week, and left Nigeria on a frequent basis when he was not working. These transitory contacts with Nigeria, *471 when compared to petitioner's contacts with Oklahoma, support the conclusion that petitioner's abode for section 911 purposes remained in Oklahoma and thus that petitioner has not demonstrated that his tax home was in Nigeria during 1983 and 1984. Syria -- 1988 and 1989
Respondent contends that petitioner's tax home was in the United States during 1988 and 1989, because petitioner maintained ties to the United States and had only transitory contacts with Syria. There is evidence that petitioner had some economic, familial, and personal ties to Oklahoma during 1988 and 1989. Petitioner spent some time in the United States during 1988 and 1989, and although his sister lived in his house, he continued to own the home in Oklahoma City. He did, however, establish social ties in Syria that, by contrast to the minimal contacts in Nigeria, support his position that his tax home was in Syria during those years. Petitioner's maintenance of a dwelling in the United States does not necessarily mean that his abode is in the United States. Ritchie v. Commissioner, T.C. Memo. 1989-426; sec. 1.911-2(b), Income Tax Regs. However, petitioner has not demonstrated *472 that he was a bona fide resident of Syria for an uninterrupted period that includes an entire taxable year. The question of whether a citizen of the United States is a bona fide resident of a foreign country is different from the question of abode, and, although it involves to some extent the same facts as those relative to determining abode, it requires a different factual determination. While the tax home inquiry focuses on the taxpayer's ties to the United States in order to determine abode, the bona fide residence inquiry focuses on the taxpayer's ties to the country of which he claims to be a resident. Additionally, the taxpayer must present "strong proof" that he was a bona fide resident of a foreign country, whereas he need only establish that his tax home was in a foreign country by a preponderance of evidence. Schoneberger v. Commissioner, 74 T.C. 1016, 1024 (1980). Therefore, a conclusion that petitioner's tax home was not within the United States in 1988 or 1989 is not determinative of whether petitioner was a bona fide resident of Syria. The determination of whether a taxpayer is a bona fide resident of a foreign country requires an *473 examination of all relevant facts and attendant circumstances. Dawson v. Commissioner, 59 T.C. 264, 268 (1972). The factors to be considered as set forth in Sochurek v. Commissioner, 300 F.2d 34, 38 (7th Cir. 1962), revg. 36 T.C. 131 (1961), were accepted in Dawson v. Commissioner, supra at 268, and are: (1) Intention of the taxpayer; (2) establishment of a home temporarily in the foreign country for an indefinite period; (3) assimilation into the foreign environment and culture; (4) physical presence in the foreign country consistent with employment; (5) nature, extent, and reasons for temporary absences from temporary foreign home; (6) assumption of economic burdens and payment of taxes to the foreign country; (7) status of resident contrasted to that of transient or sojourner; (8) treatment accorded income tax status by employer; (9) marital status and residence of family; (10) nature and duration of employment (i.e., whether assignment abroad could be promptly accomplished within a definite or specified time); and (11) good faith in making the trip abroad *474 (i.e., whether for purpose of tax evasion). Petitioner claims in his brief that he had an intensive and demonstrated interest in the Muslim world and that prior to 1978 he had undertaken extensive study in the culture and history of the Arab world. Petitioner apparently argues that he intended to remain in Syria for some indefinite period because of this interest. Petitioner's claimed study of Arab culture is based on assertions in his brief that are not evidence. Rule 143(b). We have no reason to believe that petitioner accepted employment in Syria for any reason other than to pursue an available job opportunity. Although it does not appear that petitioner was employed for any specific project, the employment letters indicate that petitioner was hired for specific 12-month periods. The employment letters make clear that petitioner was not entitled to participate in the pension plan, because his employment was for a limited duration, and that Syria Shell had no obligation to offer subsequent employment. The employment letters also state that the United States is considered to be petitioner's "base country" and that part of petitioner's salary was intended to cover his expenses *475 of maintaining a home and pension plan in the United States. Moreover, Al Furat paid income taxes to Syria on petitioner's behalf and provided a residence in Syria for petitioner, thus indicating that petitioner did not assume the "obligations" of a foreign home. Hertig v. Commissioner, 19 T.C. 109, 113-114 (1952). Petitioner argues that he was an officer at Al Furat, that the nature of such a position should establish bona fide residency itself, and, in any event, that such a position demonstrates that petitioner was more than a transient or sojourner. Petitioner was promoted to "Deputy Manager Planning Department" as of July 1, 1989, and, although this promotion may have changed his status with Al Furat, prior to that time, he was an "Economics and Planning Engineer with Technical Department" and was employed for a 12-month term. We have no reason to believe that, prior to July 1, 1989, petitioner was a corporate officer and that his work at Al Furat was intended to be carried on indefinitely. Thus, even if petitioner's promotion to "Deputy Manager Planning Department" indicates that his employment term at Al Furat became indefinite and that *476 petitioner became, at that point, a bona fide resident of Syria, petitioner still would not be a "qualified individual" because he was not a bona fide resident for an uninterrupted period that includes an entire taxable year. Estate of Roodner v. Commissioner, 64 T.C. 680 (1975); Dawson v. Commissioner, supra at 270. On brief, petitioner contends that he was not aware that Syria was a closed society and that he assimilated into the Syrian community. However, at trial, petitioner testified that "Syria at times has been a closed society"; that he lived in employer-provided housing, because he was not permitted to own real estate in Syria; that he did not maintain a bank account in Syria because he was not permitted to do so; and that, initially, he was not permitted to drive an automobile. Although petitioner had contact with some Syrian people through work and social activities and as a result of certain personal routines, the record indicates that many of petitioner's contacts were with other members of the expatriate community and with employees of the U.S. Embassy. We conclude that petitioner has not shown by *477 "strong proof" that he was a bona fide resident of Syria for the entire taxable year in 1988 or the entire taxable year in 1989. Therefore, he is not entitled to exclude any portion of his 1988 or 1989 wages from gross income under section 911(a). Additions to Tax
Respondent has determined that petitioner is liable for additions to tax for failure to file a required return under section 6651(a)(1) for 1983 and 1984. Section 6651(a)(1) imposes an addition to tax for failure to file any required return on the date prescribed, unless the failure is due to reasonable cause and not due to willful neglect. Petitioner claims that he timely filed both returns; however, he has produced no evidence of timely filing or of reasonable cause for his failure to file the returns. At trial, he conceded that returns were not received by the IRS for those years until February 1990. Accordingly, we hold that petitioner is liable for the section 6651(a)(1) additions to tax for 1983 and 1984. Respondent also determined that petitioner is liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a) for 1983 and 1984. Negligence, as used *478 in section 6653(a), is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). Petitioner contends that he has no formal training in tax law or accounting and that a prudent man would have claimed a foreign tax home and bona fide residence in Nigeria after bona fide residence had been "approved for" prior years. Each year must be examined separately. Petitioner is an intelligent and educated individual. Considering that petitioner had extensive absences from Nigeria in 1983 and 1984; that he maintained strong ties to the United States; that his employment status in Nigeria was tenuous; and that he did not assimilate into the Nigerian economy or culture, we believe that it was unreasonable of petitioner to claim the foreign earned income exclusion in 1983 and 1984. Although he claims that he had a tax attorney assisting him at the time the returns were due, he has not shown that he relied on professional advice about his status. *479 Failure to file timely returns is evidence of negligence. Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). Accordingly, petitioner is liable for the section 6653(a) additions to tax for 1983 and 1984. Respondent also determined that petitioner is liable for additions to tax for failure to pay estimated tax under section 6654(a) for 1983 and 1984. Petitioner did not have any U.S. income tax withheld, failed to make any estimated tax payments, and failed to demonstrate that he meets any of the exceptions contained in section 6654(e). Accordingly, we hold that petitioner is liable for the section 6654(a) additions to tax for 1983 and 1984. See Grosshandler v. Commissioner, 75 T.C. 1, 21 (1980). Petitioner claimed in his petition that, if he is not entitled to the section 911(a) exclusion, he is entitled to deduct expenses incurred in Nigeria and Syria under section 162. Petitioner failed to present any evidence of such expenses to respondent in accordance with the Standing Pre-Trial Order or at trial, and he did not make any argument relating to such expenses *480 in his trial memorandum. Petitioner has not met his burden of proof under Rule 142(a), and no deductions may be allowed. Decision will be entered for respondent.